**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| ALTRIA GROUP, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.:  3:19-cv-910-REP |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## PLAINTIFF ALTRIA GROUP, INC.'S TRIAL BRIEF

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave NW
Washington, DC 20005

*Attorneys for Altria Group, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

I.     FACTS .................................................................................................................2

     A.    Williams Estate Litigation ...................................................................2

     B.    Administrative History.........................................................................4

II.    LEGAL FRAMEWORK ......................................................................................5

     A.    Burden of Proof....................................................................................5

     B.    Section 162............................................................................................5

     C.    Oregon's Split-Recovery Statute .........................................................7

III.   ARGUMENT .......................................................................................................8

     A.    Oregon's Split-Recovery Statute Does Not Impose a Fine or Similar
           Penalty...................................................................................................9

          1.    The Oregon Split-Recovery Statute Did Not Impose Additional
               Liability on Altria and Therefore Cannot Be A "Fine or Similar
               Penalty."......................................................................................9

          2.    The Oregon Split-Recovery Statute Is Not a "Fine or Similar
               Penalty" Because Its Purpose Is Not Punitive. .........................10

     B.    Altria's Liability Arose from the Split-Recovery Statute, But Even If the
           Court Looked Beyond that Statute, Altria's Payment of Punitive Damages
           Would Still Be Deductible. ..................................................................15

          1.    Unlike Other Section 162(f) Cases, Altria Did Not Attempt to
               Alter Its Liability So That It Could Deduct the Payment. .........15

          2.    Assuming that the Court Looks Beyond Oregon's Split-Recovery
               Statute, the "Origin" of Altria's Payment Is the Jury's Award of
               Punitive Damages. ....................................................................19

     C.    Affirming the IRS's Position Would Result in Improper Disparate
           Treatment Between Similarly Situated Taxpayers in Different States. .................20

CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bailey v. Commissioner*,
  756 F.2d 44 (6th Cir. 1985) ...........................................................................16, 17, 19, 20

*Colt Industries, Inc. v. United States*,
  880 F.2d 1311 (Fed. Cir. 1989)..............................................................................................11

*Compton v. United States*,
  334 F.2d 212 (4th Cir. 1964) ....................................................................................................5

*DeMendoza v. Huffman*,
  51 P.3d 1232 (Or. 2002) ............................................................................................................8

*Hawronsky v. Commissioner*,
  105 T.C. 94 (1995), *aff'd*, 98 F.3d 1338 (5th Cir. 1996) ....................................................7

*Lawlor v. Zook*,
  Civil No. 2:15cv113, 2017 WL 2603521 (E.D. Va. June 15, 2017),
  *rev'd on other grounds*, 909 F.3d 614 (4th Cir. 2018) .....................................................13

*Nacchio v. United States*,
  824 F.3d 1370 (Fed. Cir. 2016)..........................................................................................17, 18

*Oshkosh Truck Corp. v. United States*,
  123 F.3d 1477 (Fed. Cir. 1997), *acq.* 1999-11 I.R.B. 5.....................................................20

*Talley Industries, Inc. v. Commissioner*,
  116 F.3d 382 (9th Cir. 1997), *action on dec.*, 1981-24 (Oct. 8, 1980) .............................11

*Trigon Insurance Co. v. United States*,
  234 F. Supp. 2d 581 (E.D. Va. 2002) ......................................................................................5

*True v. United States*,
  894 F.2d 1197 (10th Cir. 1990) ......................................................................................6, 7, 11

*Uhlenbrock v. Commissioner*,
  67 T.C. 818 (1977)......................................................................................................................17

*Vesco v. Commissioner*,
  39 T.C.M. (CCH) 101 (1979) ..................................................................................................20

*Waldman v. Commissioner*,
  88 T.C. 1384 (1987), *aff'd*, 850 F.2d 611 (9th Cir. 1988) ...............................................17

*Williams v. Philip Morris Inc.*,
    127 P.3d 1165 (Or. 2006) ................................................................2

*Williams v. RJ Reynolds Tobacco Co.*,
    271 P.3d 103 (Or. 2011) .................................................3, 4, 13, 19

## STATUTES & REGULATIONS

26 U.S.C. § 162 ....................................................................................5, 17

26 U.S.C. § 162(a) ............................................................................5, 6, 20

26 U.S.C. § 162(f) .............................................................................. passim

26 U.S.C. § 165 .........................................................................................18

26 U.S.C. § 1341 .......................................................................................16

Or. Rev. Stat. § 18.540 ...............................................................................2

Or. Rev. Stat. § 31.735 ...............................................................................1

Or. Rev. Stat. § 31.735 (2005) ...................................................................2

Or. Rev. Stat. § 31.735(1) (2005) ......................................................8, 9, 12

Or. Rev. Stat. § 31.735(3) (2005) .............................................................12

Or. Rev. Stat. § 147.015 .......................................................................7, 14

Or. Rev. Stat. § 147.105 .......................................................................7, 14

Or. Rev. Stat. § 147.125 .......................................................................7, 14

Or. Rev. Stat. § 147.225 ...........................................................................14

Or. Rev. Stat. § 147.227 .............................................................................7

Or. Rev. Stat. § 147.227(1) .......................................................................14

Or. Rev. Stat. § 147.227(2) .......................................................................14

Or. Rev. Stat. § 147.231 .............................................................................7

Or. Rev. Stat. § 147.231(1) .......................................................................15

Treas. Reg. § 1.162-21(c) .........................................................................10

Treas. Reg. § 1.162-21(b)(1) .....................................................................10

Treas. Reg. § 1.162-21(b)(1)(ii) ........................................................................................10

**OTHER AUTHORITIES**

I.R.S. Priv. Ltr. Rul. 200127022 (July 9, 2001) ...................................................................20

I.R.S. Priv. Ltr. Rul. 201548011 (Nov. 27, 2015) ................................................................20

Rev. Rul. 80-211, 1980-2 C.B. 57 ....................................................................................5, 20

S. Rep. No. 91-552 (1969) ....................................................................................................6

S. Rep. No. 92-437 (1971) ....................................................................................................6

## INTRODUCTION

This action arises under the Internal Revenue Code of 1986[1], for the recovery of U.S. federal income taxes in the amount of $9,274,072, with respect to Altria Group, Inc.'s ("Altria") 2012 tax year, plus interest thereon as provided by law.

A jury in Oregon awarded the plaintiff punitive damages in a private civil litigation against Altria. Pursuant to Oregon's split-recovery statute,[2] which redirects 60 percent of a jury-imposed punitive damages award from the plaintiff to the state of Oregon (the "State" or "Oregon"), Altria paid a portion of the punitive damages award to the plaintiff and a portion to Oregon. Altria deducted the punitive damages it paid to both the plaintiff and Oregon. The Internal Revenue Service ("IRS") concedes that the portion of the punitive damages award paid to the plaintiff is deductible but contends that the portion paid to Oregon is a nondeductible fine or penalty under section 162(f).

The IRS asserts that the redirection of a portion of the punitive damages award from the plaintiff to Oregon converts the otherwise deductible payment into a nondeductible fine or penalty. Oregon's split-recovery statute does not impose any additional liability and does not sanction any conduct—the purpose of the split-recovery statute is not punitive. Therefore, payments made pursuant to the statute are not a fine or similar penalty. The Court should end its inquiry here because Altria's payment obligation arose from the split-recovery statute. If, however, the Court looks beyond the

---

[1]    Unless otherwise specified, all "**section**" references herein are to sections of the U.S. Internal Revenue Code of 1986, as amended, (the "**Code**") and all "**Treasury Regulation section**" and "**Treas. Reg. §**" references herein are to sections of the Treasury Regulations promulgated under the Code.

[2]    Or. Rev. Stat. § 31.735.

split-recovery statute, then the origin of Altria's liability is the punitive damages award imposed by the jury, which the IRS agrees is deductible.  Accordingly, Altria is entitled to the refund it seeks, and the Court should find in Altria's favor.

## I.    FACTS

### A.    <u>Williams Estate Litigation</u>

In 1997, the estate of Jesse D. Williams, a deceased smoker (the "Williams Estate"), brought a personal injury suit against Altria[3] in Oregon state court.  Joint Statement of Undisputed Facts ¶ 9 (Aug. 3, 2020), ECF No. 24 ("JSOF").  In March 1999, a jury entered a verdict against Altria and awarded the Williams Estate $21,485.80 in economic damages, $800,000 in noneconomic damages, and $79.5 million in punitive damages.  JSOF ¶ 10; *Williams v. Philip Morris Inc.*, 127 P.3d 1165, 1171 (Or. 2006).  Although Oregon was not a party to that litigation, Altria was required, pursuant to Oregon's "split-recovery statute," to pay 60 percent (or $47.7 million) of the punitive damages award to Oregon.  Or. Rev. Stat. § 31.735 (2005).[4]  Notably, the split-recovery statute does not require the defendant to pay additional damages.  *Id.*  Rather, it simply redirects a portion of the overall punitive damages award to the Oregon Department of Justice.  *See id*.

---

[3]    In 2003, Philip Morris Companies, Inc. was re-named Altria Group, Inc. For convenience, all references to Altria in this Motion for Summary Judgment refer to Altria Group, Inc. or Philip Morris USA, its wholly owned cigarette-manufacturing subsidiary.

[4]    At the time the Williams Estate litigation began, the statute was numbered Or. Rev. Stat. § 18.540.

Altria appealed its obligation to pay a portion of the punitive damages award to the State of Oregon.  JSOF ¶ 15.  It argued that the Master Settlement Agreement ("MSA"), an agreement entered into in 1986 between 46 states, including Oregon, and several major cigarette manufacturers, including Altria, to resolve claims relating to the sale and use of tobacco products in their states, prohibited any further recovery by Oregon against it.  JSOF ¶ 20; *Estate of Williams v. RJ Reynolds Tobacco Co*., 271 P.3d 103, 106-07 (Or. 2011) ("*RJ Reynolds*").   In return for substantial annual payments in perpetuity and other concessions, the states "absolutely and unconditionally release[d] and forever discharge[d]" the manufacturers, including Altria, from "Released Claims."[5] Released Claims specifically included liability for any damages arising from the health effects of Altria's tobacco products.  Altria claimed that Oregon could not recover its statutory share of the punitive damages award pursuant to the split-recovery statute because the underlying conduct giving rise to the payment obligation constituted a "Released Claim" under the MSA.  *RJ Reynolds*, 271 P.3d at 106-07.  Oregon countered that Oregon's statutory entitlement to a percentage of the punitive damages award was not limited by the MSA because Oregon was entitled to its share "by operation of law" or, alternatively, because the MSA was ambiguous as to whether Oregon released its right to recover the statutory amount.  *Id.*  During the course of the appeal, Oregon and the Williams Estate separately entered into an agreement through which Oregon would receive 33.33 percent of the punitive damages award instead of the statutory 60 percent in

---

[5]   JX-3 at 117, ECF No. 24-3.

exchange for the Williams Estate cooperating with Oregon in defending against Altria's appeal regarding the split-recovery statute.  *Id.* at 107 n.7; JSOF ¶ 22.

Ultimately, the Oregon Supreme Court agreed with the State, holding that the MSA did not release Oregon's claim on a share of the punitive damages award because:

> as a matter of law, [Oregon's] interest is *not* directly or indirectly based on, arising out of, or related in any way to the conduct that formed the basis for the estate's claims in *Williams*.  Rather, . . . the state's interest arises by operation of law in any case in which punitive damages are awarded, without regard to the nature of the underlying litigation.

*RJ Reynolds*, 271 P.3d at 114.  In other words, Oregon's claim was not rooted in any conduct by Altria.  Rather, the obligation arose simply because the split-recovery statute redirected payment from the plaintiff to Oregon.  After the Oregon Supreme Court's decision in *RJ Reynolds*, Philip Morris paid $102,192,247.26 to Oregon.  JSOF ¶ 16.  Of this amount, $47,700,000 was punitive damages and the remainder was interest.  JSOF ¶ 16.  Per the agreement between Oregon and the Williams Estate, Oregon retained $26,497,350 of the punitive damages award plus interest and distributed the remainder to the Williams Estate.  JSOF ¶ 17.

### B.    <u>Administrative History</u>

Altria and its subsidiaries' revenues and expenses, including Philip Morris', are included on Altria's consolidated federal income tax return.  Altria timely filed its tax return for 2012, and deducted the entire amount awarded to the Williams Estate in the litigation underlying this case, including all $79.5 million plus interest paid in punitive damages. JSOF ¶¶ 1, 18.

The IRS determined that the portion of the punitive damages award paid to Oregon, $26,497,350, was not deductible under section 162(f).  JSOF ¶ 19.  The IRS did not contest the deductibility of the portion of the punitive damages award paid to the

Williams Estate.  JSOF ¶ 23.  Altria paid the tax due of $9,274,072, plus interest, and, on September 13, 2018, filed a Form 1120X Amended U.S. Corporation Income Tax Return claiming a refund of such tax, plus interest thereon as provided by law.  JSOF ¶¶ 3-4. The IRS denied Altria's claim for refund on June 6, 2019, and Altria brought this suit contesting the IRS's denial.  JSOF ¶ 5.

## II.    LEGAL FRAMEWORK

### A.    <u>Burden of Proof</u>

Altria has the burden to prove that the IRS wrongfully denied its business expense deduction.  *See Compton v. United States*, 334 F.2d 212, 216 (4th Cir. 1964); *Trigon Ins. Co. v. United States*, 234 F. Supp. 2d 581, 586 (E.D. Va. 2002) ("[T]he taxpayer bears the burden of proving either 'that no tax at all is owed or that the amount of tax owed is in a lesser amount than that determined by the IRS.'" (citation omitted)).  It is clear that Altria is entitled to deduct the full punitive damages payment, as punitive damages are fully deductible, and the split-recovery statute, pursuant to which a portion was paid to Oregon, is not punitive.  There is no basis to deny any portion of the deduction as a fine or similar penalty under section 162(f), and therefore, Altria is entitled to relief.

### B.    <u>Section 162</u>

Section 162(a) states the general rule pursuant to which Altria claimed its deduction: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ."

The IRS has acknowledged that punitive damages such as those at issue here are deductible if they are "incurred by the taxpayer in the ordinary conduct of its business operations."  Rev. Rul. 80-211, 1980-2 C.B. 57, 58.  The punitive damages awarded to

5

the Williams Estate related to alleged misconduct in connection with the sale of Altria's primary product, cigarettes. The IRS conceded that the punitive damages at issue here are deductible under section 162(a) when it allowed Altria to deduct the portion of the award paid to the Williams Estate.

The narrow issue here is whether the redirection of a portion of the punitive damages payment by the Oregon split-recovery statute from the Williams Estate to Oregon transforms that portion of the deductible punitive damages award into a nondeductible fine or penalty under section 162(f). Section 162(f), in effect in 2012, provided: "No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law."

The legislative history surrounding the enactment of section 162(f) makes clear that Congress sought to codify the "general court position" at the time regarding the non-deductibility of fines and similar penalties paid in relation to crimes. S. Rep. No. 91-552, at 274 (1969). At the time Congress enacted section 162(f), "the Supreme Court had declared in two cases concerning fines under penal statutes that no deduction was allowable for a fine or penalty if allowing the deduction would severely frustrate a sharply defined national policy." *True v. United States*, 894 F.2d 1197, 1202-03 (10th Cir. 1990). Regarding the penalties imposed in civil matters, the Senate Finance Committee report states that it was the intention of the Committee that section 162(f) would "disallow deductions for payments of sanctions which are imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute." S. Rep. No. 92-437, at 73 (1971).

Courts have also explained the appropriate application of section 162(f).

> [S]ection 162(f) encompasses fines and penalties exacted to sanction or punish conduct which some well-defined state policy seeks to proscribe. Whether the statute is determined to be 'criminal' or 'civil' is not conclusive. Rather, the nondeductibility exception for 'fines or similar penalties' includes criminal fines and any similar retributive civil penalty intended to sanction conduct the state specifically seeks to prohibit.

*True*, 894 F.2d at 1204; *see also Hawronsky v. Commissioner*, 105 T.C. 94, 98 (1995) ("Section 162(f) applies to criminal fines and any similar retributive civil penalty intended to sanction prohibited conduct."), *aff'd*, 98 F.3d 1338 (5th Cir. 1996).

### C.    <u>Oregon's Split-Recovery Statute</u>

Oregon's split-recovery statute requires that a portion of any punitive damages awarded in civil litigation be redirected to Oregon's Criminal Injuries Compensation Account. The purpose of Oregon's split-recovery statute is not punitive. JSOF ¶ 24. Rather, its purpose is to redirect a portion of each punitive damage award from the plaintiff to the Oregon DOJ's Criminal Injuries Compensation Account. JSOF ¶ 25. The Oregon DOJ's Criminal Injuries Compensation Account is used to compensate victims of crimes and to provide resources to approved victims' assistance programs and others who provide services to victims. *See* Or. Rev. Stat. §§ 147.015; 147.105; 147.125; 147.227; 147.231; *see also* JSOF ¶ 25.

At the time of the Williams Estate litigation, Oregon's split-recovery statute provided, in relevant part:

> (1) Upon the entry of a verdict including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph (b) of this subsection, and the punitive damage portion of an award shall be allocated as follows:
>
> (a) Forty percent shall be paid to the prevailing party. . . .

> (b) Sixty percent shall be paid to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section to be used for the purposes set forth in ORS chapter 147.

Or. Rev. Stat. § 31.735(1) (2005).[6]

The Oregon split-recovery statute imposes no additional liability—it merely redirects a portion of an existing award of punitive damages imposed by the jury in a private civil case to Oregon. As the Oregon courts have held, "[t]he effect of [the Oregon split-recovery statute] . . . is not to modify a jury's assessment of punitive damages, but, instead, to modify the way in which those damages are *distributed*." *DeMendoza v. Huffman*, 51 P.3d 1232, 1245 (Or. 2002).

## III.   ARGUMENT

Altria's liability to Oregon arose from the state's split-recovery statute. That statute made Oregon a judgment creditor with respect to the jury's award of punitive damages in the Williams Estate litigation. The statute did not, however, impose any additional liability on Altria; rather, it only redirected a portion of the payment to the State. Altria's position is further confirmed by the fact that the parties have stipulated that the purpose of the split-recovery statute is not punitive. Consequently, Altria's payment to Oregon is not a "fine or similar penalty" under section 162(f).

The split-recovery statute is the origin of Altria's payment obligation to Oregon and the Court should end its inquiry there. If, however, the Court looks beyond the split-recovery statute, the origin of Altria's liability is a deductible award of punitive damages.

---

[6]   Throughout this motion, Altria refers to the version of the split-recovery statute in effect at the time of Williams Estate litigation. Oregon's split-recovery statute was subsequently amended effective August 2, 2011.

The parties agree that, but for the split-recovery statute, Altria's payment of punitive damages would have been fully deductible.

Finally, adopting the IRS's position would result in improper disparate treatment between similarly situated taxpayers in different states: taxpayers sued in states without a split-recovery statute would be allowed to deduct the full amount of a punitive damages payment while taxpayers, like Altria, sued in states with a split-recovery statute could only deduct a portion of a punitive damages payment.

### A. Oregon's Split-Recovery Statute Does Not Impose a Fine or Similar Penalty.

Altria's obligation to pay Oregon arose from the state's split-recovery statute. The statute does not impose a "fine or similar penalty" because: (i) it imposed no additional liability beyond the punitive damages awarded by the jury, and (ii) its purpose is not punitive.

### 1. The Oregon Split-Recovery Statute Did Not Impose Additional Liability on Altria and Therefore Cannot Be A "Fine or Similar Penalty."

Altria's obligation to pay Oregon a portion of the deductible punitive damages award arose from Oregon's split-recovery statute. The Oregon split-recovery statute did not, however, impose any additional liability on Altria beyond the punitive damages already awarded by the jury. Rather, the statute made Oregon a judgment creditor with respect to a portion of the punitive damages award determined by the jury. Or. Rev. Stat. §31.735(1) (2005). Consequently, the Oregon split-recovery statute did not impose a "fine or similar penalty"—it imposed no additional liability whatsoever. The analysis in this case should end here: a statute that imposes no additional liability cannot be a fine or penalty.

2.    **The Oregon Split-Recovery Statute Is Not a "Fine or Similar Penalty" Because Its Purpose Is Not Punitive.**

Section 162(f) does not define "fine or similar penalty," but the regulations to section 162(f) explain that a fine or similar penalty includes amounts:

> (i) Paid pursuant to a conviction or a plea of guilty or nolo contendere for a crime (felony or misdemeanor) in a criminal proceeding; (ii) *Paid as a civil penalty imposed by Federal, State, or local law*, including additions to tax and additional amounts and assessable penalties imposed by chapter 68 of the Internal Revenue Code of 1954; (iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal); or (iv) Forfeited as collateral posted in connection with a proceeding which could result in imposition of such a fine or penalty.

Treas. Reg. § 1.162-21(b)(1) (emphasis added).[7]  There is no dispute that the only potentially applicable provision in the regulatory definition of "fine or similar penalty" is subsection (ii): whether the Oregon split-recovery statute imposes a "civil penalty."

Treas. Reg. § 1.162-21(b)(1)(ii).

---

[7]    The regulation includes the following examples of fines or similar penalties: 1) A $50,000 criminal fine paid to the United States upon conviction of violating the Sherman Anti-Trust Act by fixing and maintaining prices for certain products; 2) A $5,000 civil penalty paid to the Coast Guard for violating 33 U.S.C. § 1321(b)(3) by discharging oil in harmful quantities in navigable waters; 3) A $10,000 civil penalty paid for violating 42 U.S.C. § 1857f-2(a)(1) by selling a new motor vehicle that was not covered by a required certificate of conformity; 4) A $10,000 civil penalty for violating the Federal Coal Mine Health and Safety Act of 1969; 5) A $250 penalty paid by a common carrier for violating 45 U.S.C. § 11 by operating a railroad car without efficient hand brakes; 6) An $85 fine paid to "State X" for operating on the highways of the State a truck that weighed in excess of the amount permitted under the law of the State; 7) A $500 fine paid to "State Y" for violating a law of the State that prohibited the emission into the air of particulate matter in excess of a limit imposed by the State; and 8) A $200 fine paid to "City Z" for operating an apartment building within the City that did not conform to a provision of the City housing code requiring operable fire escapes.  Treas. Reg. § 1.162-21(c).

*(cont'd)*

The courts have explained what constitutes a civil penalty, noting that amounts subject to section 162(f) include "criminal fines and any similar retributive civil penalty intended to sanction conduct the state specifically seeks to prohibit." *True*, 894 F.2d at 1204. The Ninth Circuit further explained that whether a civil penalty is nondeductible depends upon "the purpose which the statutory penalty is to serve." *Talley Indus., Inc. v. Commissioner*, 116 F.3d 382, 385 (9th Cir. 1997), explaining:

> If a civil penalty is imposed for purposes of enforcing the law and as punishment for the violation thereof, [the payment is not deductible]. However, if the civil penalty is imposed to encourage prompt compliance with a requirement of the law, or as a remedial measure to compensate another party for expenses incurred as a result of the violation, it [is deductible because it] does not serve the same purpose as a criminal fine and is not "similar" to a fine within the meaning of section 162(f).

*Id.* (quoting *Southern Pac. Trans. Co. v. Commissioner*, 75 T.C. 497, 652-53 (1980)).[8] To disallow Altria's deduction for the portion of punitive damage payment made to Oregon, the court would need to find that the "purpose" of such payment was to enforce or punish a violation of the law. The split-recovery statute, in fact, does neither.

a)    *The purpose of the statute is not punitive.*

The split-recovery statute does not prohibit any conduct, does not sanction any conduct, and does not impose any liability. The parties agree that the purpose of the split-recovery statute is not punitive. JSOF ¶ 24.

---

[8]    *Cf. Colt Indus., Inc. v. United States*, 880 F.2d 1311, 1313 (Fed. Cir. 1989) (declining to entertain a purposive inquiry of the statute imposing a civil penalty because there was no dispute as to whether the amounts paid were "civil penalties"; rather, the taxpayer argued that notwithstanding the fact that the payments were civil penalties, they should nevertheless be deductible because the penalties did not "serve a punitive or criminal purpose" (citation omitted)). The Oregon split-recovery statute does not purport to be a civil penalty and, therefore, the analysis in *Colt* is irrelevant.

The plain text of the split-recovery statute also makes clear that it does not sanction any conduct and is not imposed to punish violations of the law.  Oregon becomes a judgment creditor once the verdict is entered.  The statute states:

> (1) Upon the entry of a verdict including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph (b) of this subsection, and the punitive damage portion of an award shall be allocated as follows:
>
> > (a) Forty percent shall be paid to the prevailing party. . . .
> >
> > (b) Sixty percent shall be paid to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section to be used for the purposes set forth in ORS chapter 147.

Or. Rev. Stat. §31.735(1) (2005).  Oregon does not participate at all in the underlying lawsuit.  In fact, the prevailing party is obligated to notify Oregon of the verdict so that it can enforce its right to a portion of the award.  Or. Rev. Stat. § 31.735(3) (2005).[9]  Prior to notice by the prevailing party, Oregon does not know that a claim is pending and, even after receiving notice, Oregon does not receive any information regarding the underlying facts that form the basis for the award.  It cannot genuinely be argued that the split-recovery statute seeks to sanction particular conduct, enforce a particular law or punish violations of law, when Oregon is not even aware of the basis for the award.

---

[9]  "Upon the entry of a verdict including an award of punitive damages, the prevailing party shall provide notice of the verdict to the Department of Justice.  In addition, upon entry of a judgment based on a verdict that includes an award of punitive damages, the prevailing party shall provide notice of the judgment to the Department of Justice.  The notices required under this subsection must be in writing and must be delivered to the Department of Justice Crime Victims' Assistance Section in Salem, Oregon within five days after the entry of the verdict or judgment."  Or. Rev. Stat. § 31.735(3) (2005).

Case 3:19-cv-00910-REP    Document 25    Filed 08/07/20    Page 18 of 28 PageID# 503

In the litigation underlying this case, the Oregon Supreme Court confirmed that the split-recovery statute is indifferent to the conduct underlying the award of punitive damages and, for that reason, cannot be said to sanction any conduct. *See RJ Reynolds*, 271 P.3d at 110. In *RJ Reynolds*, Altria argued that the jury's punitive damages award resulted from conduct related to its manufacturing and distribution of tobacco products, and that Oregon had released Altria from any liability for such conduct beyond that imposed by the MSA. In other words, Altria argued it had already been released from any liability to the State for the conduct giving rise to the damages award. The Oregon Supreme Court held, however, that payment of the punitive damages award to Oregon was not barred by the MSA because the split-recovery statute was "blind to the nature of the underlying action and the conduct that gave rise to it." *Id.* at 110. The Supreme Court of Oregon stated,

> as a matter of law, that [Oregon's] interest is *not* directly or indirectly based on, arising out of, or related in any way to the conduct that formed the basis for the estate's claims in *Williams*. Rather, . . . the state's interest arises by operation of law in any case in which punitive damages are awarded, <u>without regard to the nature of the underlying litigation</u>.

> *Id.* at 114 (underscoring emphasis added). This Court is bound by the Oregon Supreme Court's interpretation of the nature of its split-recovery statute.[10] Because payment under the split-recovery statute is not imposed as punishment for the violation of any law, it is not a fine or similar penalty under section 162(f).

---

[10] The Oregon Supreme Court's decision is binding as to its interpretation of Oregon law. *Lawlor v. Zook*, Civil No. 2:15cv113, 2017 WL 2603521, at *29 (E.D. Va. June 15, 2017) (citing *Johnson v. Fankell*, 520 U.S. 911, 916 (1997)), *rev'd on other grounds*, 909 F.3d 614 (4th Cir. 2018).

    b)  *The purpose of the split-recovery statute is to compensate*
       *victims of crime.*

  Further, the split-recovery statute is part of a statutory scheme intended to

compensate the victims of crime and, for that reason, is remedial rather than punitive.

The Oregon split-recovery statute redirects 60 percent of a punitive damages award to

Oregon and into the Criminal Injuries Compensation Account.  The parties agree that the

purpose of the Criminal Injuries Compensation Account is to "compensate victims of

crimes and to provide resources to approved victims' assistance programs and others who

provide services to victims."  JSOF ¶ 25.

  Oregon Revised Statute § 147.225 established the Criminal Injuries

Compensation Account.  The Oregon Attorney General is responsible for disbursing

money from the Criminal Injuries Compensation Account to victims of crimes that are

eligible for compensation and apply.  Or. Rev. Stat. §§ 147.015; 147.105; 147.125.  The

Attorney General may also disburse funds from the Criminal Injuries Compensation

Account to counties and cities that maintain victims' assistance programs approved by

the Attorney General for exclusive use in the approved victims' assistance programs.  Or.

Rev. Stat. § 147.227(1).  These victims' assistance programs must, among other things,

(1) provide services to victims of all crimes, (2) give priority to victims of serious crimes,

(3) collaborate with community-based and government agencies to benefit victims, and

(4) provide certain core services to victims of crime including informing victims about

the criminal process, preparing victims for testimony and assisting victims in completing

paperwork for restitution and claims for funds from the Criminal Injuries Compensation

Account.  Or. Rev. Stat. § 147.227(2).  The Attorney General may also "make grants

from the Criminal Injuries Compensation Account to eligible public or private nonprofit

agencies that provide services to victims of violent crimes, property crimes and crimes involving fraud and deception." Or. Rev. Stat. § 147.231(1).

Oregon's split-recovery statute does not impose a fine or similar penalty under section 162(f). Oregon does not seek to punish any conduct and the statute is not otherwise punitive. Consequently, the portion of the jury's punitive damages award in the Williams Estate litigation redirected to Oregon under the state's split-recovery statute is not a "fine or similar penalty" under section 162(f).

**B.  Altria's Liability Arose from the Split-Recovery Statute, But Even If the Court Looked Beyond that Statute, Altria's Payment of Punitive Damages Would Still Be Deductible.**

The government will likely argue that Oregon's split-recovery statute is irrelevant and, instead, the Court should look to the "origin" of Altria's liability for purposes of determining whether the amount paid to Oregon was a "fine or similar penalty." The government is wrong for two reasons. First, the cases evaluating the origin of a liability in the section 162(f) context do so because the taxpayer has attempted to make a liability that was a nondeductible fine or penalty when initially imposed, deductible by recasting it in another form. That is not the case here: as explained above by the Oregon Supreme Court, Altria's liability to Oregon arose by operation of state law and not by any action Altria took. Second, if the Court looks beyond the split-recovery statute—which it should not—the origin of Altria's liability is a fully deductible award of punitive damages.

**1.  Unlike Other Section 162(f) Cases, Altria Did Not Attempt to Alter Its Liability So That It Could Deduct the Payment.**

Courts have held that the origin of the liability controls whether a payment is a fine or penalty under section 162(f). These cases have all involved situations in which a

15

taxpayer claims that a liability initially imposed as a nondeductible fine or penalty can be transformed into a deductible payment by subsequent events or recharacterizations. The leading case is *Bailey v. Commissioner*, 756 F.2d 44 (6th Cir. 1985). There, the taxpayer had been ordered by a court to pay a penalty for violating a consent decree that he entered into with the Federal Trade Commission. *Id*. at 46. The taxpayer requested that the court apply the penalty payment "as restitution in a settlement of a multidistrict class action against [the company] and its officers." *See id*. at 46. The court agreed. Subsequently, the taxpayer sought to deduct the penalty, arguing that it had been applied as restitution to private litigants and therefore did not run afoul of section 162(f).[11] *Id*. The Sixth Circuit explained that "Bailey's obligation to pay the $1,036,000 payment arose out of a judgment in a suit brought against Bailey by the FTC to recover civil penalties," and that "Bailey . . . forfeited the $1,036,000 as punishment for his violations of the Federal Trade Commission Act." *Id*. at 47. The court went on to explain:

> The fact that the California district court, *upon Bailey's application*, permitted him to apply the $1,036,000 civil penalty toward the settlement of his potential liabilities in the multidistrict class action does not change the status of the payment as a civil penalty. The characterization of a payment for purposes of § 162(f) turns on the origin of the liability giving rise to it.

---

[11] Technically, the taxpayer was seeking a reduction in income under section 1341, but in order to qualify for such a reduction, the restitution payment had to be deductible and could not be a fine or penalty under section 162(f). Section 1341 "provides a special method for computing tax liability in circumstances where a taxpayer has received an item of income under 'claim of right,' included that item in income, and in a subsequent taxable year was required to restore that item because it was established that the taxpayer did not in fact have an 'unrestricted right to such item.'" *Bailey*, 756 F.2d at 46.

*Id.* (emphasis added) (citing *Middle Atl. Distribs. v. Commissioner*, 72 T.C. 1136, 1144-45 (1979) (stating that when considering the application of section 162(f), "the character of the payment involved depends on the origin of the liability giving rise to it")); *Uhlenbrock v. Commissioner*, 67 T.C. 818, 823 (1977) (rejecting the taxpayer's attempt to recharacterize a penalty imposed by section 6651(a) as a debt of the estate he was administering); *accord Waldman v. Commissioner*, 88 T.C. 1384, 1389 (1987) ("The characterization of a payment for purposes of section 162(f) depends on the origin of the liability giving rise to it." (citation omitted)), *aff'd*, 850 F.2d 611 (9th Cir. 1988).

In this case, Altria did not attempt to convert an otherwise nondeductible payment into a deductible one by altering its form. As explained below, and not disputed by the government, the original award of punitive damages by the jury was fully deductible. Altria's obligation to pay Oregon arose by operation of Oregon state law—not any action by Altria. In fact, Altria attempted to avoid application of the Oregon split-recovery statute.

Similarly, in evaluating the origin of a liability for purposes of section 162(f), courts have looked to whether the ultimate dispensation of the payment was subject to the payee's discretion. Courts reject taxpayer's attempts to claim a deduction for payments that, although initially nondeductible fines or penalties, were ultimately used to compensate victims on a discretionary basis. In *Nacchio v. United States*, 824 F.3d 1370 (Fed. Cir. 2016), the Federal Circuit held that a criminal forfeiture payment distributed to the defendant's victims instead of the state constituted a fine or similar penalty within the meaning of section 162(f) and was, therefore, not deductible under section 162 or section

17

165.[12] *Id.* at 1373-74, 1377, 1380-81.  The court based its decision, in part, on the fact that "Nacchio's criminal forfeiture meets the definition of a 'fine or similar penalty' under Treasury Regulation § 1.162-21(b)(1)."  *Id.* at 1378.  Significantly, the fact that the forfeiture payment was used as remission to eligible victims as opposed to being paid to the government did not change the characterization of the payment as a fine or penalty: "[t]he Attorney General's post-hoc decision to use the forfeited funds for remission did not transform the character of the forfeiture so that it was no longer a 'fine or similar penalty' under § 162(f).  *The decision to use the forfeited funds to compensate the victims was discretionary*."  *Id.* at 1380 (emphasis added).  The court went on to state "'[t]he characterization of a payment for purposes of § 162(f) turns on the origin of the liability giving rise to it'"—if that were not the case, it is possible "that whether two people convicted of the same crimes could deduct their criminal forfeiture would not turn on their actions, or the statutes governing their sentencings, but on the after-the-fact discretionary decisions of a third party."  *Id.* at 1380-81 (quoting *Bailey*, 756 F.2d at 47).

The same "discretionary decision" that troubled the *Nacchio* court exists here.  Lawyers for Oregon decided that the Williams Estate should receive 26.67 percent more than required by the Oregon split-recovery statute.  And the government permitted a deduction for the entire payment to the Williams Estate, both the statutory portion and the additional amount that Oregon agreed to pay the Williams Estate.  As the court in *Nacchio* said, deductibility should not turn on an after-the-fact discretionary adjustments.  Consequently, the Court should not look past the Oregon split-recovery statute and

---

[12]   Courts "look[] to § 162(f) when interpreting the scope of permissible loss deductions under § 165."  *Nacchio*, 824 F.3d at 1375.

permit the state's discretionary dispensation of the award to control whether Altria gets a deduction for its payment.

### 2. Assuming that the Court Looks Beyond Oregon's Split-Recovery Statute, the "Origin" of Altria's Payment Is the Jury's Award of Punitive Damages.

The origin of Altria's liability to Oregon is the state's split-recovery statute. Although the Court should not look beyond the state's split-recovery statute, even if it did, the Court must conclude that the origin of Altria's liability is the jury's award of deductible punitive damages. In either case, section 162(f) does not apply.

As discussed above, *Bailey* and similar cases hold that the origin of taxpayer's liability controls for purposes of determining whether such liability is a fine or similar penalty under section 162(f). In those cases, taxpayers have argued that the redirection of a payment, or change in payee, causes an otherwise non-deductible fine or penalty to be transformed into a deductible expense.

Applying *Bailey* here, Altria's initial liability arose by reason of the jury's imposition of punitive damages. At that point in time, Altria's only liability was to the Williams Estate because it was the plaintiff in the litigation. Oregon had no interest in the litigation until after entry of the judgment. As the Oregon Supreme Court explained, Oregon's interest was in no way related to the conduct giving rise to the litigation and, instead, arose solely by operation of the Oregon split-recovery statute upon entry of judgment. *See RJ Reynolds*, 271 P.3d at 114. In this way, the split-recovery statute redirected a portion of the jury's award of punitive damages to the state. Under *Bailey*, which holds that "[t]he characterization of a payment for purposes of § 162(f) turns on the origin of the liability giving rise to it," the Court must determine that the origin of

19

Altria's liability was the jury's award of punitive damages, which is deductible. *Bailey*, 756 F.2d at 47.

It is undisputed that but for Oregon's split-recovery statute, the entire punitive damages award would have been paid to the Williams Estate and would be deductible. JSOF ¶¶ 19, 23. The government agrees that punitive damages awards are deductible if they are ordinary and necessary expenses paid in carrying on a trade or business. *See* Rev. Rul. 80-211, 1980-2 C.B. 57, 58 ("Amounts paid as punitive damages incurred by the taxpayer in the ordinary conduct of its business operations are deductible as an ordinary business expense under section 162 of the Code.").[13] And, in this case, the IRS specifically agreed that the punitive damages award paid to the Williams Estate was deductible as an ordinary and necessary business expense by allowing Altria to deduct that portion even though part of that payment should have gone to Oregon pursuant to the split-recovery statute. JSOF ¶ 23.

**C.    Affirming the IRS's Position Would Result in Improper Disparate Treatment Between Similarly Situated Taxpayers in Different States.**

The IRS and courts both seek to avoid treating similarly situated taxpayers differently. "[U]nless there is a rational reason for different treatment, similarly situated taxpayers should be treated similarly." *Oshkosh Truck Corp. v. United States*, 123 F.3d 1477, 1481 (Fed. Cir. 1997), *acq.* 1999-11 I.R.B. 5; *see also Vesco v. Commissioner*, 39

---

[13]    *See also* I.R.S. Priv. Ltr. Rul. 200127022 (July 9, 2001) (concluding that the entire award ordered by an arbitrator, including the punitive damages portion of the award, was deductible under section 162(a)); I.R.S. Priv. Ltr. Rul. 201548011 (Nov. 27, 2015) (concluding that the jury's compensatory and punitive damages awards entered against a taxpayer who was sued by a shareholder for breach of fiduciary duty and fraud, were deductible as ordinary and necessary business expenses under section 162(a)).

T.C.M. (CCH) 101, 130 (1979), *action on dec.*, 1981-24 (Oct. 8, 1980) ("We merely hold that respondent's practice in effect in 1971 should be applied to petitioner on the same basis as it is applied to other taxpayers.").

If this Court accepts the IRS's interpretation that the portion of the punitive damages award paid to Oregon is nondeductible, then similarly situated taxpayers located in jurisdictions without a split-recovery statute will be treated differently for no other reason than the location of the jury award. This distinction will be based in no part on the conduct underlying the litigation. The difference will be based purely on the location of the lawsuit—whether a plaintiff sues a taxpayer and is subsequently awarded punitive damages in a state that has a split-recovery statute. This distinction is irrational because taxpayers engaged in identical conduct, sued for identical alleged misconduct and, in theory, required to pay identical punitive damages awards would not be treated the same for federal income tax purposes. A taxpayer sued in a jurisdiction without a split-recovery statute would be able to deduct the full award payment while a taxpayer, like Altria, sued in a split-recovery jurisdiction would only be able to deduct the portion paid to the private party.

For this additional reason, the Court should conclude that the portion of the punitive damages award paid to Oregon is deductible.

## CONCLUSION

For the foregoing reasons, Altria respectfully requests that the Court rule for the Plaintiff and conclude that Altria is entitled to a refund in the amount of $9,274,072 with regard to the overstatements of income, unclaimed credits, and overstatements of tax described in the Complaint for the 2012 tax year, and such further amounts as may be

21

calculated due to corresponding correlative adjustments or such greater amount as is

legally refundable, plus statutory interest as allowed by law.

Dated: August 7, 2020                    Respectfully submitted,


                                         _____/s/_____
                                         Todd D. Kelly
                                         Virginia Bar No. 92331
                                         Royce Tidwell *(Pro hac vice)*
                                         Jennifer Gindin *(Pro hac vice)*
                                         Sanessa Griffiths *(Pro hac vice)*
                                         Skadden, Arps, Slate, Meagher & Flom LLP
                                         1440 New York Avenue, N.W.
                                         Washington, DC  20005
                                         Telephone: (202) 371-7000
                                         Facsimile: (202) 393-5760
                                         Email: todd.kelly@skadden.com
                                                royce.tidwell@skadden.com
                                                jennifer.gindin@skadden.com
                                                sanessa.griffiths@skadden.com

                                         *Attorneys for Plaintiff Altria Group, Inc.*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

_____ /s/ _____
Todd D. Kelly
Virginia Bar No. 92331
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: todd.kelly@skadden.com

*Attorney for Plaintiff Altria Group, Inc.*