# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

|  |  |
|---|---|
| ALTRIA GROUP, INC. <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: 3:19-cv-910-REP |

## PLAINTIFF ALTRIA GROUP, INC.'S REPLY TRIAL BRIEF

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave NW
Washington, DC 20005

*Attorneys for Altria Group, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I. ARGUMENT........................................................................................................1

    A. The Oregon Split-Recovery Statute Gave Rise to Altria's Obligation to Oregon and the Parties Stipulated that the Statute Is Not Punitive..........................1

    B. Section 162(f) Does Not Deny Deductions for Punitive Damages.........................3

        1. The Public Policy Doctrine. ......................................................................5

        2. Codification of the Public Policy Doctrine. ..............................................6

        3. Courts Continue to Interpret Section 162(f) Consistently with the Public Policy Doctrine. ..............................................................................9

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*DeMendoza v. Huffman*,
    51 P.3d 1232 (Or. 2002) ................................................................................................. 2

*Engquist v. Oregon Department of Agriculture*,
    478 F.3d 985 (9th Cir. 2007) ........................................................................................... 2

*Green v. Commissioner*,
    507 F.3d 857 (5th Cir. 2007) ........................................................................................... 8

*Hackworth v. Commissioner*,
    155 F. App'x 627 (4th Cir. 2005) .................................................................................... 4

*Hawronsky v. Commissioner*,
    105 T.C. 94 (1995), *aff'd*, 98 F.3d 1338 (5th Cir. 1996) ................................................ 2

*Jerry Rossman Corp. v. Commissioner*,
    175 F.2d 711 (2d Cir. 1949) ............................................................................................ 6

*King v. Burwell*,
    576 U.S. 473 (2015) ........................................................................................................ 5

*Martin v. United States*,
    780 F.2d 1147 (4th Cir. 1986) ......................................................................................... 2

*Nacchio v. United States*,
    824 F.3d 1370 (Fed. Cir. 2016) ....................................................................................... 9

*Southern Pacific Transportation Co. v. Commissioner*,
    75 T.C. 497 (1980) .......................................................................................................... 9

*Talley Industries, Inc. v. Commissioner*,
    116 F.3d 382 (9th Cir. 1997) ............................................................................... 2, 3, 10

*Tank Truck Rentals, Inc. v. Commissioner*,
    356 U.S. 30 (1958) .......................................................................................................... 6

*True v. United States*,
    894 F.2d 1197 (10th Cir. 1990) ................................................................................... 2, 9

*University of Texas Southwestern Medical Center v. Nassar*,
    570 U.S. 338 (2013) ........................................................................................................ 5

*Utility Air Regulatory Group v. EPA*,
 573 U.S. 302 (2014) ......................................................................................................... 5

*West Virginia University Hospitals, Inc. v. Casey*,
 499 U.S. 83 (1991), *superseded by statute on other grounds*, Landgraf v. USI
 *Film Prods.*, 511 U.S. 244 (1994) .................................................................................... 5

*Williams v. Philip Morris, Inc.*,
 127 P.3d 1165 (Or. 2006) ............................................................................................ 1, 2

*Williams v. RJ Reynolds Tobacco Co.*,
 271 P.3d 103 (Or. 2011) .................................................................................................. 2

**STATUTES**

26 U.S.C. § 162 ......................................................................................................................... 6, 7

26 U.S.C. § 162(a) ......................................................................................................................... 8

26 U.S.C. § 162(f) ................................................................................................................. passim

26 U.S.C. § 162(f)(3) (2017) ......................................................................................................... 3

26 U.S.C. § 162(g) ......................................................................................................................... 7

26 U.S.C. § 165 .............................................................................................................................. 4

1989 Ill. Laws 1431 (codified by 735 Ill. Comp. Stat. Ann. 5/2-1207 (West Supp. 1999)) ............ 8

1996 Mo. Laws 869 § C (codified by Mo. Ann. Stat. § 537.675 (West Supp. 2000)) ................... 8

An Act Relating to Punitive Damages, ch. 237, § 1, 1989 Utah Laws 717 (codified by
 Utah Code Ann. § 78-18-1 (1996) ................................................................................... 9

Act of April 10, 1992, ch. 55, § 393, 1992 N.Y. Laws 2286 ......................................................... 8

Act of April 10, 1992, ch. 55 § 427(dd), 1992 N.Y. Laws 2304 .................................................... 8

Act of April 26, 1985, ch. 197, § 2(e), 1985 Kan. Sess. Laws 951, 953 (repealed 1988) .............. 8

Act of March 6, 1998, § 47, 1998 Ind. Acts 317 (codified at Ind. Code Ann. § 34-51-3-6
 (Michie 1998)) .................................................................................................................. 8

Act of May 9, 1997, ch. 26, § 10, 1997 Alaska Sess. Laws 1, 5 (codified by Alaska Stat. §
 09.17.020 (Michie 1998)) ................................................................................................. 8

Act of May 16, 1986, ch. 106, 1986 Colo. Sess. Laws 675 (repealed by Act of March 9,
 1995, ch. 6, 1995 Colo. Sess. Laws 14) ........................................................................... 8

Act of May 22, 1986, ch. 1211, 1986 Iowa Acts 313 (codified with amendments by Iowa Code Ann. § 668A.1 (West 1998)) ..........................................................................8

Act of July 17, 1987, ch. 774, § 3, 1987 Or. Laws 1570, 1571 (codified with amendments by Or. Rev. Stat. § 18.540 (Supp. 1996)) ...............................................................8

Act of June 26, 1986, ch. 160, § 52, 1986 Fla. Laws 749 (repealed 1997) ....................................8

Or. Rev. Stat. § 31.730 ...................................................................................................................1

Or. Rev. Stat. § 31.735(1) (2005) ...................................................................................................1

Tax Cuts and Jobs Act, Pub. L. No. 115-97, 131 Stat. 2054 (2017) ...............................................3

Tort Reform Act of 1987, No. 672, 1987 Ga. Laws 915 (codified with amendments by Ga. Code Ann. § 51-12-5.1 (Supp. 1999)) ........................................................................8

**OTHER AUTHORITIES**

H.R. Rep. No. 155-466 (2017) .......................................................................................................4

I.R.S. Priv. Ltr. Rul. 200127022 (July 9, 2001) .............................................................................8

I.R.S. Priv. Ltr. Rul. 201548011 (Nov. 27, 2015) ..........................................................................8

Rev. Rul. 80-211, 1980-2 C.B. 57 ..................................................................................................8

S. Rep. No. 91-552 (1969) .....................................................................................................6, 7, 8

S. Rep. No. 92-437 (1971) ..............................................................................................................6

Scott Dodson, *Assessing the Practicality and Constitutionality of Alaska's Split-Recovery Punitive Damages Statute*, 49 Duke L.J. 1335 (2000) ........................................................8

## INTRODUCTION

The government avoids the dispositive issue in this case: Altria's obligation to pay the state of Oregon (the "State" or "Oregon") arose from the State's split-recovery statute[1] and not the jury's award of punitive damages. The split-recovery statute does not impose a "fine or similar penalty" because: (i) it imposed no additional liability beyond the punitive damages awarded by the jury, and (ii) its purpose is not punitive. Even if the Court looked beyond the split-recovery statute, the statutory framework and legislative history make clear that punitive damages are not disallowed by section 162(f).

## I.  ARGUMENT

### A. The Oregon Split-Recovery Statute Gave Rise to Altria's Obligation to Oregon and the Parties Stipulated that the Statute Is Not Punitive.

The government's focus on Oregon's punitive damages statute is misplaced: Altria's obligation to Oregon arose from Oregon's split-recovery statute and not the jury's award of punitive damages. Prior to the passage of the split-recovery statute, Altria would have been solely liable to the plaintiff in the *Williams* litigation. *See Williams v. Philip Morris, Inc.*, 127 P.3d 1165 (Or. 2006); Or. Rev. Stat. § 31.730 (setting the standards for punitive damages awards). The split-recovery statute made the Oregon Department of Justice a judgment creditor "upon entry of a verdict including an award of punitive damages" and "allocated" "[s]ixty percent . . . to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section." Or. Rev. Stat. § 31.735(1) (2005). Consequently, Oregon's split-

---

[1]  Terms not defined herein have the same meaning as such terms in Plaintiff Altria Group, Inc.'s Trial Brief (Aug. 7, 2020), ECF No. 25.

1

recovery statute gave rise to Altria's obligation to Oregon, and this Court's inquiry should be limited to whether this statute imposes a fine or similar penalty.

The split-recovery statute does not punish conduct. JSOF ¶ 24; *see True v. United States*, 894 F.2d 1197, 1204 (10th Cir. 1990) ("[T]he nondeductibility exception for 'fines and similar penalties' includes criminal fines and any similar retributive civil penalty intended to sanction conduct the state specifically seeks to prohibit."); *see also Hawronsky v. Commissioner*, 105 T.C. 94, 98 (1995) ("Section 162(f) applies to criminal fines and any similar retributive civil penalty intended to sanction prohibited conduct."), *aff'd*, 98 F.3d 1338 (5th Cir. 1996). As the Oregon Supreme Court concluded in the *Williams* litigation, the split-recovery statute is "blind to the nature of the underlying action and the conduct that gave rise to it."[2] *Williams v. RJ Reynolds Tobacco Co.*, 271 P.3d 103, 110 (Or. 2011); *see also Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1006 (9th Cir. 2007) (concluding in its review of the Oregon split-recovery statute that the "split-remedy scheme is not intended to punish"); *DeMendoza v. Huffman*, 51 P.3d 1232, 1245 (Or. 2002) ("The effect of [the Oregon split-recovery statute] . . . is not to modify a jury's assessment of punitive damages, but, instead, to modify the way in which those damages are distributed.").

---

[2] The government argues at length about whether this Court is bound by Oregon state law. United States' Trial Br. (Aug. 28, 2020), ECF No. 26 ("Resp. Br.") at 13-14. While the government correctly cites the law, it fails to properly apply it. Federal law first looks to state law to determine what rights or interests are at issue, and then applies federal law to determine the tax consequences. *See Martin v. United States*, 780 F.2d 1147 (4th Cir. 1986). In this case, the question is what happened under state law: did the Oregon split-recovery statute impose a fine or penalty. *See, e.g.*, *True,* 894 F.2d at 1204 (noting that amounts subject to section 162(f) include "criminal fines and any similar retributive civil penalty intended to sanction conduct the state specifically seeks to prohibit"); *Talley Indus., Inc. v. Commissioner*, 116 F.3d 382, 385 (9th Cir. 1997) (explaining that deductibility under section 162(f) turns on the purpose of the statute giving rise to the liability). Because that is a question of state law, the Oregon Supreme Court authority is controlling.

The split-recovery statute thus does not impose a fine or similar penalty for purposes of section 162(f), because it imposes no additional liability beyond the punitive damages awarded by the jury. Moreover, the proceeds raised by the statute are used to compensate the victims of crime and, therefore, if the statute were to be characterized by the nature of the payment, the statute is remedial rather than punitive and not subject to section 162(f). JSOF ¶ 25; *see Talley Indus.*, 116 F.3d at 382.

That the Oregon split-recovery statute gave rise to Altria's obligation to Oregon, and that the parties have stipulated that the statute is not punitive should begin and end this Court's inquiry. The government's attempts to look beyond the Oregon split-recovery statute to the jury's imposition of punitive damages must be rejected.

B.      **Section 162(f) Does Not Deny Deductions for Punitive Damages.**

If the Court looks beyond the Oregon split-recovery statute to the jury's imposition of punitive damages, the government's arguments still fail. While its "*paid to*" versus "*awarded to*" contention is a clever turn of phrase, Resp. Br. at 11, it misconstrues Altria's argument and section 162(f).[3] The government would have the Court read section 162(f) as a series of three

---

[3]  The government claims that a 2017 amendment to section 162(f), which is not applicable here, proves Altria is attempting to rewrite the statute. Resp. Br. at 11. The government misconstrues the language in the amendment. Prior to the amendment, the statute—as applicable here—read: "No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law." In 2017, Congress expanded the statute to include not just amounts "paid to a government," but also amounts "paid or incurred (whether by suit, agreement, or otherwise) to, or *at the direction of*, a government or governmental entity . . . ." Tax Cuts and Jobs Act, Pub. L. No. 115-97, 131 Stat. 2054, 2126-27 (2017) (emphasis added).

The limitation pointed to by the government in section 162(f)(3) (2017), which requires that the government or governmental entity be a party, is necessary because the statute was expanded to include not just amounts paid to the government, but also amounts paid at the

*(cont'd)*

3

wholly independent inquiries: (i) was the taxpayer required to pay an amount as punishment for wrongdoing, (ii) was such amount paid to the government, and (iii) was such amount paid for the violation of law.

Claiming that authority for its position is "sparse," the government cites to the unpublished *Hackworth v. Commissioner* opinion claiming it "strongly indicated that . . . the 'fine or similar penalty' element is a separate inquiry from the 'paid to a government' inquiry." Resp. Br. at 10 (citing 155 F. App'x 627, 632 (4th Cir. 2005)). The government's citation is misleading: the *Hackworth* court did not even cite to section 162(f), much less conduct a statutory analysis of it. Instead, the court applied the more general public policy doctrine in assessing the taxpayer's claimed deductions under section 165. Moreover, when the court referenced "fine or similar penalty" and "paid to a government," it was merely reciting the taxpayer's analytical framework. *Hackworth*, 155 F. App'x at 629.

The lack of authority for the government's reading of section 162(f) is not surprising: section 162(f) was always intended to and has always captured only fines or penalties imposed by the government. The so-called "elements" of the statute identified by the government are not independent inquiries—they must be read together to give effect to the statute's purpose.[4] It is a

---

    direction of the government. The legislative history makes clear that this limitation was intended to clarify that court ordered payments in private litigation are not "at the direction of" the government. H.R. Rep. No. 155-466, at 430 n.882 (2017) ("Thus, for example, the provision does not apply to payments made by one private party to another in a lawsuit between private parties, merely because a judge or jury acting in the capacity as a court directs the payment to be made. The mere fact that a court enters a judgment or directs a result in a private dispute does not cause the payment to be made 'at the direction of a government' for purposes of the provision.").

4    The government argues that section 162(f) is unambiguous and, therefore, Congress' animating purpose in enacting it is irrelevant. Resp. Br. at 11, n.6. Congress first introduced
*(cont'd)*

"fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 475 (2015) (citation omitted). Thus, statutes must be interpreted consistent "with the design and structure of the statute as a whole." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013); *see also Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (Scalia, J.) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). As Justice Scalia articulated it, the obligation of courts is "to make sense rather than nonsense out of the *corpus juris*." *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991), *superseded by statute on other grounds*, *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).

The government correctly recites the history and purpose of section 162(f), noting that it codified the common law doctrine that certain deductions would be disallowed on "public policy" grounds. Resp. Br. at 6-7. But the government fails to acknowledge the import of the statute's history and construction: in codifying the "public policy" doctrine, Congress specifically considered whether to deny deductions for noneconomic damages, such as punitive damages, and concluded that such deductions should *only* be denied in a very narrow set of circumstances not present here.

    1.    <u>The Public Policy Doctrine.</u>

Prior to the passage of section 162(f) in 1969, courts developed the "public policy" doctrine. Courts acknowledged that the doctrine was a "judicial gloss," but found it necessary because "when acts are condemned by law and their commission is made punishable by fines or

---

ambiguity into the statute when it expanded it, through legislative history rather than amendment, to encompass not just fines or penalties in criminal matters, but in civil matters as well. *See* Resp. Br. at 7. Moreover, there is a large body of case law interpreting the meaning of "fine or similar penalty," demonstrating the statute's ambiguity.

forfeitures, to allow these to be deducted from the wrongdoer's gross income, reduces, and so in part defeats, the prescribed punishment." *Jerry Rossman Corp. v. Commissioner*, 175 F.2d 711, 713 (2d Cir. 1949). The Supreme Court articulated the doctrine in *Tank Truck Rentals.* In that case, the IRS disallowed the taxpayer's deduction for fines paid to several states for violations of their vehicle maximum weight laws. *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30 (1958). The Supreme Court concluded that the deduction was properly disallowed because allowing a deduction would "encourage continued violations of state law by increasing the odds in favor of noncompliance . . . [and] tend to destroy the effectiveness of the State's maximum weight laws." *Tank Truck Rentals*, 356 U.S. at 35. The Court explained that "[d]eduction[s] of fines and penalties uniformly has been held to frustrate state policy in severe and direct fashion by reducing the 'sting' of the penalty prescribed by the state legislature." *Id*. at 35-36.

    2.  Codification of the Public Policy Doctrine.

In 1969, Congress codified the public policy doctrine in section 162.[5] In doing so, Congress specifically contemplated the extent to which "damages paid to a private party in a cause of action in which the successful party is entitled to damages in a greater amount than the economic loss demonstrated by him." S. Rep. No. 91-552, at 273 (1969) (the "Senate Report").

> *Present law.* At the present time there is no statutory provision setting forth a general "public policy" basis for denying deductions which are "ordinary and necessary" business deductions. Nevertheless, a number of business expenses have been disallowed on the ground that the allowance of these deductions would be contrary to Federal or State "public policy." This has been true, for example, in the case of fines. <u>One question which arises in this regard is whether deductions should</u>

---

[5] In 1971, amidst confusion of whether 162(f) was limited to criminal fines and penalties, the Senate Committee clarified that section 162(f) did apply to civil penalties but only those that "serve the same purpose as a fine exacted under a criminal statute." S. Rep. No. 92-437, at 73 (1971).

*(cont'd)*

6

>> be allowed for damages paid to a private party in a cause of action in which the successful party is entitled to damages in a greater amount than the economic loss demonstrated by him. <<Under section 4 of the Clayton Act, for example, a person injured by an antitrust violation may sue for damages and recover three times the amount of economic loss established.

*Id.* (emphasis added). As this history demonstrates, Congress contemplated noneconomic damages awarded to private parties, such as punitive damages.[6]

In the "explanation of provisions," quoted below, the Senate Report makes clear that the *only* type of noneconomic damages subject to disallowance by amended section 162 are certain damages under the antitrust laws. Importantly, the Senate Report also makes clear that the amendment to section 162 was intended to establish the *complete universe* of deductions to be disallowed on public policy grounds. From the Report:

> *Explanation of provisions*. The provision added by the committee amendments denies deductions for four types of expenditures: fines or similar penalties paid to a government for the violation of any law, a portion of treble damage payments under the antitrust laws following a related criminal conviction (or plea of equity or nolo contendere), deductions for bribes paid to public officials (whether or not foreign officials), and other unlawful bribes or "kickbacks." >>The provision for the denial of the deduction for payments in these situations which are deemed to violate public policy is intended to be all inclusive. Public policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions.<<

*Id.* at 274 (emphasis added).

Thus, Congress contemplated whether noneconomic damages, such as punitive damages, should be denied as violative of public policy and decided that *only* certain damages awarded in antitrust cases should be disallowed. *See* Section 162(g) (disallowing deductions for certain

---

[6] The reference to treble damages under the Clayton Act is, as the Senate Report notes, one "example" of noneconomic damages. Although unclear from the text of the report, it appears that antitrust damages were specifically referenced in the "present law" section because, as explained below, Congress amended section 162 to deny deductions for the "punitive" portion of such damages.

7

antitrust damages). The Senate Report reasoned that "[p]ublic policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions." *Id*. at 274. Therefore, punitive damages are not within the ambit of section 162(f)—regardless of whether such damages are paid to a government or a private litigant.

The legislative history is consistent with the fact that neither the Internal Revenue Service, in administrative guidance, nor any court has ever disallowed a deduction for punitive damages under section 162(f) or on public policy grounds.[7] Split-recovery statutes have been on state books since 1985. *See* Scott Dodson, *Assessing the Practicality and Constitutionality of Alaska's Split-Recovery Punitive Damages Statute*, 49 Duke L.J. 1335, 1336 fn.12 (2000) (collecting enacting statutes for states with split-recovery statutes).[8] These statutes vary by state

---

[7] *See Green v. Commissioner*, 507 F.3d 857, 871 (5th Cir. 2007) ("Punitive damages may be deductible under § 162 as a business expense, but only to the extent that such expense is 'ordinary and necessary' and is incurred in connection with a 'trade or business.'"); *see also* Rev. Rul. 80-211, 1980-2 C.B. 57, 58; I.R.S. Priv. Ltr. Rul. 200127022 (July 9, 2001) (concluding that the entire award ordered by an arbitrator, including the punitive damages portion of the award, was deductible under section 162(a)); I.R.S. Priv. Ltr. Rul. 201548011 (Nov. 27, 2015) (concluding that the jury's compensatory and punitive damages awards entered against a taxpayer who was sued by a shareholder for breach of fiduciary duty and fraud, were deductible as ordinary and necessary business expenses under section 162(a)).

[8] The following are the original statute enactments followed by their current status: Act of May 9, 1997, ch. 26, § 10, 1997 Alaska Sess. Laws 1, 5 (codified by Alaska Stat. § 09.17.020 (Michie 1998)); Act of May 16, 1986, ch. 106, 1986 Colo. Sess. Laws 675 (repealed by Act of March 9, 1995, ch. 6, 1995 Colo. Sess. Laws 14); Act of June 26, 1986, ch. 160, § 52, 1986 Fla. Laws 749 (repealed 1997); Tort Reform Act of 1987, No. 672, 1987 Ga. Laws 915 (codified with amendments by Ga. Code Ann. § 51-12-5.1 (Supp. 1999)); 1989 Ill. Laws 1431 (codified by 735 Ill. Comp. Stat. Ann. 5/2-1207 (West Supp. 1999)); Act of March 6, 1998, § 47, 1998 Ind. Acts 317 (codified at Ind. Code Ann. § 34-51-3-6 (Michie 1998)); Act of May 22, 1986, ch. 1211, 1986 Iowa Acts 313 (codified with amendments by Iowa Code Ann. § 668A.1 (West 1998)); Act of April 26, 1985, ch. 197, § 2(e), 1985 Kan. Sess. Laws 951, 953 (repealed 1988); 1996 Mo. Laws 869 § C (codified by Mo. Ann. Stat. § 537.675 (West Supp. 2000)); Act of April 10, 1992, ch. 55, § 393, 1992 N.Y. Laws 2286 (also set date of repeal, Act of April 10, 1992, ch. 55 § 427(dd), 1992 N.Y. Laws 2304); Act of July

*(cont'd)*

but generally limit the windfall a plaintiff may receive as a result of a punitive damages award by giving a portion of the award to the state to use as authorized by its statute. Yet, in the 35-year history of split-recovery statutes and their consistent application to punitive damages awards in at least seven states, there are no reported cases and no IRS administrative authority denying a deduction for punitive damages under section 162(f).

### 3. Courts Continue to Interpret Section 162(f) Consistently with the Public Policy Doctrine.

Courts interpret and apply section 162(f) consistently with its purpose of codifying the public policy doctrine. *See, e.g.*, *S. Pac. Transp. Co. v. Commissioner*, 75 T.C. 497, 654 (1980) (denying a deduction for civil penalties under section 162(f) related to work force safety because "[i]f a deduction of the penalties were allowed for tax purposes, it would take some of the sting out of the penalties and would frustrate the public policy. Thus, the penalties incurred by petitioner fall precisely within the scope of the public policy doctrine finally enunciated by the Supreme Court."). In 1990, the Tenth Circuit reviewed the history behind section 162(f) and explained, "[t]hese comments, along with the prior case law which the 1969 report incorporated, indicate that section 162(f) encompasses fines and penalties exacted to sanction or punish conduct which some well-defined state policy seeks to proscribe." *True*, 894 F.2d at 1204. In disallowing the deduction for a fine paid for violation of the Clean Water Act, the court noted that the Clean Water Act set forth an "urgent and sharply defined national policy" and the sanction was meant to "deter and punish" violators. *Id.* at 1206; *see also Nacchio v. United States*, 824 F.3d 1370, 1377 (Fed. Cir. 2016) (identifying the relevant question as "whether

---

17, 1987, ch. 774, § 3, 1987 Or. Laws 1570, 1571 (codified with amendments by Or. Rev. Stat. § 18.540 (Supp. 1996)); An Act Relating to Punitive Damages, ch. 237, § 1, 1989 Utah Laws 717 (codified by Utah Code Ann. § 78-18-1 (1996)).

9

Nacchio's criminal forfeiture is a 'fine or similar penalty' under § 162(f), or *if allowing a deduction in these circumstances would otherwise frustrate public policy*"); *Talley Indus.*, 116 F.3d at 388 (explaining that whether or not a civil penalty was a "similar penalty" for 162(f) turned on whether the "allowance … *would frustrate a sharply defined public policy proscribing a particular type of conduct*") (emphasis added). This Court should do the same and conclude, as the statutory framework, legislative history and application to date demonstrate, section 162(f) does not deny deductions for punitive damages.

## CONCLUSION

Altria has met its burden of demonstrating that it is entitled to a $9,274,072 income tax refund for the 2012 year. The government cannot avoid the simple fact that the Oregon split-recovery statute, which gave rise to Altria's liability to Oregon, is not punitive and, therefore, deductions for amounts paid pursuant to it are not disallowed by section 162(f).

Dated: September 28, 2020

Respectfully submitted,

/s/
Todd D. Kelly
Virginia Bar No. 92331
Royce Tidwell *(Pro hac vice)*
Jennifer Gindin *(Pro hac vice)*
Sanessa Griffiths *(Pro hac vice)*
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: todd.kelly@skadden.com
royce.tidwell@skadden.com
jennifer.gindin@skadden.com
sanessa.griffiths@skadden.com

*Attorneys for Plaintiff Altria Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/
Todd D. Kelly
Virginia Bar No. 92331
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: todd.kelly@skadden.com

*Attorney for Plaintiff Altria Group, Inc.*