IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALTRIA GROUP, INC.,

    Plaintiff,

v.                   Civil Action No. 3:19-cv-910

UNITED STATES OF AMERICA,

    Defendant.

### MEMORANDUM OPINION

This matter is before the Court for resolution on the merits based on the stipulated factual record. See ORDER, ECF No. 23; see also JOINT STATUS REP., ECF No. 22.

The issue here presented is whether 26 U.S.C. § 162(f) foreclosed Altria Group, Inc. ("Altria") from claiming as an ordinary and necessary business expense deduction on its 2012 federal income tax return, the portion of a punitive damage award that was paid to the State of Oregon pursuant to Oregon's so-called "split recovery statute" (Or. Rev. Stat. § 31.735). The resolution of that issue turns on whether the portion of a punitive damage award that was paid to Oregon under that state statute "constituted 'any fine or similar penalty paid to a government for the violation of any law.'" JOINT STATUS REP. 2, ECF No. 22 (quoting 26 U.S.C. § 162(f) (2012)). The issue was fully briefed, and the parties agreed to submit the case for decision on the basis of the briefing and the stipulated record.

Thereafter, the Court asked for oral argument (ECF No. 37), and, on December 16, 2021, the parties presented arguments and visual presentations in aid thereof. Based on the stipulated record, the briefs, the oral arguments, and the related visual presentations, the Court finds that the payment made to Oregon by Altria pursuant to Oregon's split recovery statute is a deductible business expenses within the meaning of Section 162(f).

## BACKGROUND

To understand the issue under the federal tax law here in dispute, Section 162(f), it is necessary briefly to outline: (a) the case that gave rise to the punitive damage award (<u>Williams v. Philip Morris Inc.</u>);[1] and (b) the Oregon split recovery statute under which Oregon took a part of that award. It is also necessary to understand (c) a related case brought by the State of Oregon (<u>State v. Philip Morris</u>) and (d) its aftermath as to both Philip Morris and the Williams Estate.[2] Lastly, and before

---

[1] Philip Morris USA, Inc. ("Philip Morris") is a subsidiary of Altria. JOINT STATEMENT OF UNDISPUTED FACTS ¶ 7, ECF No. 24. Altria's principal place of business is Richmond, Virginia. <u>Id.</u> ¶ 6.

[2] <u>Williams v. RJ Reynolds Tobacco Co.</u>, 271 P.3d 103 (Or. 2011) provides the detailed procedural history regarding <u>Williams v. Philip Morris Inc.</u>, and <u>State v. Philip Morris</u>. The Oregon Supreme Court eventually consolidated the two cases discussed below, <u>Williams v. Philip Morris Inc.</u> and <u>State v. Philip Morris</u>, "to decide the legal questions surrounding entitlement to the punitive damages award . . . whether by signing the MSA,

discussing the resolution of the issues presented for decision, it is important to understand: (e) the federal tax statutes at issue; (f) Altria's 2012 tax return; and (g) Oregon's substantive punitive damage statutes. Each will be discussed briefly before turning to the tax issue.

## A. Williams v. Philip Morris Inc.

In 1997, the estate of Jesse Williams sued Philip Morris alleging that Williams' death from lung cancer was the result of negligence and fraud on the part of Philip Morris. Williams v. Philip Morris Inc., 127 P.3d 1165, 1167-68 (Or. 2006). Williams' Estate prevailed on its misrepresentation claim on which the jury awarded economic damages ($21,485.80), non-economic damages ($800,000.00), and punitive damages ($79,500,000.00). Id. at 1171. Williams' Estate also prevailed on its negligence claim on which the jury awarded the same sums for economic and non-economic damages and found that Williams and Philip Morris were equally negligent. The jury awarded no punitive damages on the negligence claim. Id.

Philip Morris appealed the jury verdict, including the award of punitive damages. The punitive damages award was vacated as a result of the decision of the Supreme Court of the

---

the state released its allocated share in the Williams punitive damages award and, if so, what should happen to that money." Williams v. RJ Reynolds Tobacco Co., 271 P.3d 103, 106 (Or. 2011).

United States in _Philip Morris USA v. Williams_, 549 U.S. 346 (2007). On remand, the Oregon Supreme Court affirmed the punitive award for other reasons. _Williams v. Philip Morris Inc._, 176 P.3d 1255 (Or. 2008), _cert._ _dismissed_ as improvidently granted. 556 U.S. 178 (2009).

## B. Oregon's Split Recovery Statute (Or. Rev. Stat. § 31.735)[3]

Part of the punitive damage award in _Williams v. Philip Morris Inc._ was paid to Oregon pursuant to the State's split recovery statute, so it is appropriate to pause here to understand the nature of a split recovery statute generally, and to understand Oregon's version of that legislative genre. Generally speaking:

> [s]plit recovery statutes attempt to align the impact of punitive damages awards more closely with their purposes, by _eliminating_ a _perceived windfall_ aspect while _maintaining_ the _deterrence_ effect. These two _objectives_ are _met through redistribution of the award_-instead of the plaintiff receiving all of it, a portion goes to the State.
>
> ***
>
> In general split recovery statutes provide that, after punitive damages are awarded to a plaintiff, _a portion_ of the punitive _award is turned over to the state_. . . . All told one quarter of U.S. States have experimented[4] [with the concept].

---

[3] In 1997, when the _Williams_ complaint was filed, the statute was Or. Rev. Stat. § 18.540, but, in 2003, it was renumbered as Or. Rev. Stat. § 31.735. And, that designation is used in all pertinent briefing and decisions.

[4] As of 2011, some states had repealed such statutes. And, after the decision in _Philip Morris USA v. Williams_, 549 U.S. 346

<u>Split   Recovery   Statutes</u>,   The   Sedona   Conference   1   (2011) https://thesedonaconference.org/sites/default/files/commentary_d rafts/DistributionSplit%2520Recovery%2520Statutes.pdf   (emphasis added).

Not   all   such   statutes   operate   in   the   same   way.   The pertinent part of Oregon's version is as follows:

> (1) <u>Upon the entry of a verdict including</u> an award of <u>punitive damages</u>, the <u>Department of Justice shall become a judgment creditor</u> as to the punitive damages portion of the award <u>to which the Criminal Injuries Compensation Account is entitled</u> pursuant to paragraph (b) of this subsection, and the punitive damage portion of an award <u>shall be allocated as follows</u>:
>
> > (a)<u>Forty percent</u> shall be paid to the <u>prevailing party</u>.
>
> > ***
>
> > (b)<u>Sixty percent</u> shall be paid to the <u>Criminal Injuries Compensation Account</u> of the Department of Justice Crime Victims' Assistance Section <u>to be used for the purposes set forth in ORS chapter 147</u>.
>
> > ***
>
> (3) <u>Upon the entry of a verdict including an award of punitive damages, the prevailing party</u> shall provide <u>notice</u> of the verdict to the <u>Department of Justice</u>.
>
> Or. Rev. Stat. § 31.735 (2005) (emphasis added).[5]

---

(2007), there is a question as to the continued viability of split recovery statutes. <u>Split Recovery Statutes</u> at 8.

[5] The current version allocates the award in a slightly different way by allowing the prevailing party to retain only 30 percent of the award, giving 60 percent to the Attorney General for

The general, purpose of Or. Rev. Stat. ch. 147 (identified in subsection (1)(a) cited above) is, as its title states, to help "Victims of Crime and Mass Destruction." That purpose is accomplished by funding provided by the State and by taking funds from perpetrators of crimes and from punitive damage awards made in the state courts and depositing them in the Criminal Injuries Compensation Account. That account provides money, medical treatment, counseling, and a host of other services required to help victims of crime deal with or recover from the crimes of which they are victims.

C.   **State v. Philip Morris** ("State's Case")

Also, in 1997, Oregon sued several United States cigarette manufacturers, including Philip Morris, alleging, <u>inter alia</u>, unfair trade practices and violations of Oregon's Racketeer Influenced and Corrupt Organizations Act ("RICO") statute. <u>State v. Am. Tobacco Co., Inc., et al.</u>, No. 9706-04457 (Or. 1997), (but the case is generally known as <u>State v. Philip Morris</u>)[6]. There, Oregon claimed that "it had incurred hundreds of millions of dollars in increased Medicaid expenses for medical care for

---

deposit in the Criminal Injuries Compensation Account, and giving 10 percent to the Attorney General for deposit in the State Court Facilities and Security Account.

[6] The citation of that case is as set out above, but because of the way the trial court maintained the records, the case is actually known as <u>State v. Philip Morris</u>. See <u>Williams v. RJ Reynolds Tobacco Co.</u>, 271 P.3d at 105, n.3.

low-income Oregon residents and increased health insurance premiums for public employees as a result of the tobacco companies' unlawful conduct." Williams v. RJ Reynolds Tobacco Co., 271 P.3d at 105-06.

In 1998, Oregon settled its claims in the State's Case as part of a multi-state Master Settlement Agreement ("MSA") between 46 states and several tobacco companies including Philip Morris. Id. at 106. As part of the MSA, the settling states "agreed to release the tobacco companies from past and future claims relating to the manufacturing of, sale of, and exposure to tobacco products, as well as claims relating to research statements or warnings regarding tobacco products." Id. (footnote omitted). The MSA was signed in November 1998. Id.

In April 1999, and as a result of the MSA, Philip Morris sent a letter to the Oregon Attorney General stating that, notwithstanding Oregon's split recovery statute, no portion of the punitive damage award from Williams v. Philip Morris Inc. was due to Oregon. Williams v. RJ Reynolds Tobacco Co., 271 P.3d at 106. That, according to Philip Morris, was because, when Oregon executed the MSA, Oregon had released its claim under the split recovery statute to the 60 percent of the punitive damages in Williams v. Philip Morris Inc. Id. Oregon then moved in State v. Philip Morris for declaratory relief respecting whether, under the split recovery statute, the State was entitled to part

of the punitive damages under the split recovery statute made in
Williams v. Philip Morris Inc., notwithstanding the release in
the MSA. See Williams v. RJ Reynolds Tobacco Co., 271 P.3d 103,
106-07 (Or. 2011).

The trial court stayed further proceedings in Williams v.
Philip Morris Inc. while Philip Morris' appeal was pending. Id.
Once the Williams v. Philip Morris Inc. award was affirmed, the
trial court lifted the stay, consolidated Williams v. Philip
Morris Inc. and State v. Philip Morris, and recommenced
proceedings on Oregon's declaratory judgment action. Williams v.
RJ Reynolds Tobacco Co., 271 P.3d at 106. The trial court
ultimately ruled in favor of Philip Morris, holding that, by
virtue of the MSA, Oregon had released any right to be paid
under the split recovery statute Id.

Oregon then appealed directly to the Oregon Supreme Court,
id. at 108, which reversed the trial court, finding that the
"MSA's definitions of 'Claims' or 'Released Claims'" did not
"encompass the State's interest in an allocation of the Williams
punitive damages award." Id. at 109-13. Therefore, by virtue of
the split recovery statute, Oregon was in fact due a portion of
the punitive damage award in Williams v. Philip Morris Inc. Id.
at 113.

**D. The Agreement Between the Williams Estate and Oregon**

During the appeals process stemming from Williams v. Philip Morris Inc., Oregon and the Williams Estate entered into an agreement, in 2004, that was intended to ensure that Philip Morris was required to pay the entire amount of the punitive damages awarded in Williams v. Philip Morris Inc. if that award ultimately was affirmed. That agreement provided a sharing of the punitive damages award that differed from the sharing provision of the split recovery statute. In part, the agreement between Oregon and the Williams Estate provides:

> Any amount recovered by the State of Oregon or by the Williams Estate or both in State of Oregon v. Philip Morris, whether by litigation to final judgment, by settlement, or by any other means, shall be paid 55% to the State of Oregon and 45% to the Williams Estate and its attorneys. In the event that Philip Morris pays 100% of the final appellate judgment in Williams v. Philip Morris, the State of Oregon would receive 33.33% of the total punitive damages recovered, and the Williams Estate and its attorneys would receive 66.67% of the total punitive damages recovered.

Williams v. RJ Reynolds Tobacco Co., 271 P.3d at 107, n. 7 (emphasis added). The result of the underscored text, of course, was to change the amount of the punitive damage award that would go to Oregon under the split recovery statute. (Oregon would receive 33.33 percent; the Williams Estate would receive 66.67 percent if Philip Morris paid 100 percent of final judgment). See JOINT STATEMENT OF UNDISPUTED FACTS ¶ 22, ECF No. 24.

After the punitive damages award was affirmed on appeal in 2009, Philip Morris paid the Williams Estate more than $61 million in full satisfaction of the award of economic and noneconomic damages, and in full satisfaction of the estate's interest in the punitive damages award, plus costs and interest on those awards. See Williams v. RJ Reynolds Tobacco Co., 271 P.3d at 106. Following the decision of the Oregon Supreme Court in Williams v. RJ Reynolds Tobacco Co., "Philip Morris paid Oregon $102,192,247.26. Of this amount, $47,700,000 was punitive damages and the remainder was interest." JOINT STATEMENT OF UNDISPUTED FACTS ¶ 16, ECF No. 24. Based on the split recovery statute and the 2004 agreement between the Williams Estate and Oregon, Oregon retained $26,497,350 of the $47,700,000 in punitive damages paid to the State under Williams v. Philip Morris Inc. Oregon then dispersed additional funds to the William Estate based on the 2004 agreement between the State and the Williams Estate under which Oregon was to receive 33.33 percent of the total punitive damages rather than the statutory 60 percent. Id. ¶ 24.

**E. The Federal Tax Statute at Issue: Section 162(f)**

That brings the analysis to the tax statutes. Section 162(a) of the Internal Revenue Code allows the deduction of "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. §

162(a). Section 162(f), however, limits Section 162(a). In 2012 (i.e., the year in which Altria filed the relevant tax return), Section 162(f) stated, in relevant part:

> No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

26 U.S.C. § 162(f) (2012) (emphasis added).

Treasury regulations from that point in time defined "fine or similar penalty" as an amount "(ii) paid as a civil penalty imposed by Federal, State, or local law . . . [or] (iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal)." Treas. Reg. § 1.162-21(b)(1)(ii), (iii) (1979).[7] These regulations also stated: "Compensatory damages . . . paid to a government do not constitute a fine or penalty." Id. § 1.162-21(b)(2).

F.   The 2012 Tax Return

Following the decision of the Oregon Supreme Court in Williams v. RJ Reynolds Tobacco Co., Altria filed its 2012 tax return deducting, under Section 162(a), the entire portion of the punitive damage payment that went to the Williams Estate and the part of the punitive damage award, including interest (i.e.,

---

[7] Subsection (i) is not relevant here. It included payments in criminal cases.

11

$102,192,247.26), that went to Oregon under the split recovery statute. JOINT STATEMENT OF UNDISPUTED FACTS ¶¶ 2, 18, ECF No. 24.

The Internal Revenue Service ("IRS") allowed the deduction for the part of the punitive damage award that Philip Morris paid to the Williams Estate. However, the IRS disallowed the deduction for the portion of the punitive damages award that was retained by Oregon, $26,497,350, pursuant to its 2004 agreement with the Williams Estate and the split recovery statute. The disallowance was made by invoking Section 162(f) and asserting that the payment made by Altria to Oregon was a fine or similar penalty paid to a government for the violation of a law. Id. ¶ 18; see also 26 U.S.C. § 162(f) (2012).

Altria then paid the tax and interest that resulted from the IRS adjustments. JOINT STATEMENT OF UNDISPUTED FACTS ¶ 3, ECF No. 24. The tax due on the disallowed part of Altria's claim was $9,974,072.[8]

In September 2018, Altria timely filed a Form 1120X Amended U.S. Corporation Income Tax Return claiming a refund of $9,974,072. Id. ¶ 4; see also JOINT STATEMENT OF UNDISPUTED FACTS, Ex. JX-1, ECF No. 24-1. According to Altria, the IRS erroneously treated the portion of the punitive damage award

---

[8] That number is the tax plus interest due as a result of the IRS adjustments. See PL. ALTRIA GROUP, INC.'S TRIAL BR. 10, ECF No. 25.

retained by Oregon (i.e., $26,497,350) as a fine or similar penalty pursuant to Section 162(f). PL. ALTRIA GROUP, INC.'S TRIAL BR. 9, ECF No. 25.

In June 2019, the IRS notified Altria that Altria's refund request was disallowed in full. Id. ¶ 5; Ex. JX-2, ECF No. 24-2. Subsequently, Altria filed this action seeking (1) the recovery of $9,274,072 in federal income taxes paid by Altria in the 2012 tax year plus any interest allowed by law; (2) an award for the costs of this action; and (3) any other relief that this Court deems appropriate.

## G. Oregon's Punitive Damages Statutes

Because Section 162(f) uses the term "fine or similar penalty" and "for violation of any law" and because the focus of the tax issue here is a punitive damage award, it is helpful to understand Oregon's statutes that govern the award of punitive damages.

That entails reference to three statutes. JOINT STATUS REP. 2, ECF No. 22. The first addresses the standard for recovery of an award of punitive damages [Or. Rev. Stat. § 31.730]. The second addresses factors to consider in the award of punitive damages [Or. Rev. Stat. § 30.925]. The third, the "split recovery statute," which already has been discussed briefly, governs the allocation of punitive damages awards [Or. Rev. Stat. § 31.735].

The other two statutes are pertinent because they set the framework for deciding whether a punitive award can be made. The substantive punitive damage statute defining when punitive damages may be awarded is Or. Rev. Stat. § 31.730(1), which provides:

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

Or. Rev. Stat. § 31.730.[9]

The statute that provides detailed guidance to the jury when assessing a request for punitive damages is Or. Rev. Stat. § 30.925, which provides seven factors for consideration:

> (2) Punitive damages, if any, shall be determined and awarded based upon the following criteria: (a) The likelihood at the time that serious harm would arise from the defendant's misconduct; (b) The degree of the defendant's awareness of that likelihood; (c) The profitability of the defendant's misconduct; (d) The duration of the misconduct and any concealment of it; (e) The attitude and conduct of the defendant upon discovery of the misconduct; (f) The financial condition of the defendant; and (g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the

---

[9] Subsection (2) and (3) are not relevant here.

14

> claimant's and the severity of criminal penalties to
> which the defendant has been or may be subjected.[10]

Or. Rev. Stat. § 30.925 (emphasis added).

It is in perspective of the foregoing factual, procedural, and statutory background that the tax issue in this case must be decided.

## DISCUSSION

Whether taxpayers are entitled to a deduction is a question of law. See Hackworth v. Comm'r, 155 F. App'x 627, 629 (4th Cir. 2005) (citing Metzger v. Comm'r, 38 F.3d 118, 120 (4th Cir. 1994)). The burden rests on the taxpayer to demonstrate "the right to the claimed deduction[.]" Interstate Transit Lines v. Comm'r, 319 U.S. 590, 593 (1943); Belk v. Comm'r, 774 F.3d 221, 225 (4th Cir. 2014); Compton v. United States, 334 F.2d 212, 216 (4th Cir. 1964); Trigon Ins. Co. v. United States, 234 F. Supp. 2d 581, 586 (E.D. Va. 2002) (In a refund suit, "the taxpayer bears the burden of proving either 'that no tax at all is owed or that the amount of tax owed is in a lesser amount than that determined by the IRS.'") (internal citation omitted). Furthermore, the taxpayer "must establish the exact amount which she is entitled to recover." Trigon Ins. Co., 234 F. Supp. at

---

[10] Subsection (g) of Or. Rev. Stat. § 30.925 was the focal point of the appeal to the Supreme Court of the United States in Philip Morris USA v. Williams, 549 U.S. 346 (2007). But the Supreme Court's decision focusing on subsection (g) and the decision of the Oregon Supreme Court on remand are not implicated in the tax issue presented in this case.

586. "Deductions are strictly construed and allowed only 'as there is a clear provision therefor.'" INDOPCO, Inc. v. Comm'r, 503 U.S. 79, 84 (1992).

The parties stipulate that an Oregon jury concluded that Philip Morris engaged in conduct that, under Or. Rev. Stat. § 31.730, Oregon's punitive damages statute, permitted the jury to award punitive damages. JOINT STATEMENT OF UNDISPUTED FACTS ¶¶ 10, 26, ECF No. 24. It is undisputed that: Oregon was not a party to the litigation, and that the payment that ultimately went to Oregon under its settlement with the Williams Estate was paid to Oregon because of the split recovery statute. Id. ¶¶ 20-22.

Altria argues that its liability to pay the government arose from Oregon's split recovery statute which rendered "Oregon a judgment creditor with respect to the jury's award of punitive damages in the Williams Estate litigation." PL. ALTRIA GROUP, INC.'S TRIAL BR. 8, ECF No. 25. In Altria's view, the split recovery statute simply redirects a portion of the punitive damages payment to Oregon and does not impose any liability on Altria for its conduct. Therefore, says Altria, its payment to Oregon was not a "fine or similar penalty" paid to a government "for the violation of any law."

The United States takes the view that Section 162(f) bars Altria's refund claim because the punitive damages awarded

16

against Altria acted as a punishment and resulted in a payment "to a government", and that Altria's misrepresentation[11] constituted a "violation of any law." UNITED STATES' TRIAL BR. 8-9, ECF No. 26. The United States disagrees with Altria's argument that the split recovery statute serves as the origin of Altria's obligation to pay the government because a "fine or similar penalty" under Section 162(f) turns on whether the award was imposed as punishment. Further, the United States argues that the decision of the Oregon Supreme Court in Williams v. RJ Reynolds Tobacco Co. is neither persuasive nor controlling as to the federal tax treatment of Altria's payment of punitive damages to Oregon. Id. at 13.

The resolution of these competing views starts with Section 162(a), which allows taxpayers to deduct all ordinary and necessary trade or business expenses. However, the resolution depends on Section 162(f), which provides that no deduction shall be allowed under Section 162(a) "for any fine or similar penalty paid to a government for the violation of any law," thereby limiting Section 162(a).

A.   **The Section 162(f) Issue**

In other words, the key issue is one of statutory interpretation. So, the analysis begins, as always, with the

---

[11] The punitive damage award was made only on the misrepresentation claim filed by the Williams Estate, not on its negligence claim.

statutory text of Section 162(f) of the Internal Revenue Code. See, e.g., POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 113 (2014) (relying on the "traditional rules of statutory interpretation" by "beginning with the text of the two statutes"); Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 7 (2011) (beginning the statutory interpretation analysis by first assessing the text of the statute); Whitman v. Am. Trucking Assocs., 531 U.S. 457, 472-73 (2001) (reviewing the text of the statute at issue and contemplating the text in light of the statutory history and context).

The dispositive part of the statutory text respecting whether the deduction was properly disallowed is: "for any fine or similar penalty paid to a government for the violation of any law." There are three parts to that text: (1) "for any fine or similar penalty;" (2) "paid to a government;" (3) "for the violation of any law."

## 1. Paid to a Government

It is not disputed that Altria paid a part of the awarded amount to "a government." 26 U.S.C. § 162(f)(1). See generally JOINT STATEMENT OF UNDISPUTED FACTS, ECF No. 24. No discussion is required on this point.

## 2. For Any Fine or Similar Penalty

There seems to be no dispute that the punitive damage award made by the jury in Williams v. Philip Morris Inc. was not a

18

fine. And, although the parties agree that, in <u>Williams v. Philip Morris Inc.</u>, the jury awarded punitive damages within the meaning of the applicable Oregon statutes, that does not necessarily mean that the punitive damage award in <u>Williams v. Philip Morris Inc.</u> is a "similar penalty," the other term that is used in Section 162(f). The statute does not define "similar penalty," so the text does not supply the answer. The usual canons of statutory construction thus instruct that the Court must look to the ordinary meaning of "similar penalty."[12]

### (a)   Ordinary Meaning

The ordinary meaning of "penalty" is "punishment." <u>Penalty</u>, Oxford English Dictionary, https://www.oed.com/view/Entry/139990 ?redirectedFrom=Penalty#eid (last visited Jan. 10, 2021). It is also defined as "a punishment imposed or incurred for violation of law or rule." <u>Penalty</u>, Dictionary.com, https://www.dictionary.com/browse/penalty (last visited Dec. 7, 2021). The definition of "similar" is "having significant or notable resemblance or likeness in appearance, form, character,

---

[12] 26 U.S.C. § 162(f)(1); <u>see, e.g.</u>, <u>Bostock v. Clayton Cty.</u>, __ U.S. __, 140 S.Ct. 1731, 1750 (2020) (discussing the ordinary meaning of the phrase "'because of . . . age,'"); <u>Univ. Tex. Southwestern Med. Ctr. v. Nassar</u>, 570 U.S. 338, 350 (2013) (finding that the "the ordinary meaning of 'because of' is 'by reason of' or 'on account of.'") (quoting <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 176 (2009)); <u>Nix v. Hedden</u>, 149 U.S. 304, 306 (1893) ("There being no evidence that the words 'fruit' and 'vegetables' have acquired any special meaning in trade or commerce, they must receive their ordinary meaning.").

quality, etc. to something . . . of like nature or kind." Similar, Oxford English Dictionary, https://www.oed.com/view/Entry/179873?redirectedFrom=similar#eid (last visited Jan. 10, 2021). It also is defined as "having a likeness or resemblance." Similar, Dictionary.com, https://www.dictionary.com/browse/similar (last visited Dec. 7, 2021). So, in its ordinary sense, the term "similar penalty" is a punishment that has a significant or notable resemblance or likeness to a fine.

Because "similar penalty" relates back to the word "fine," it is necessary to ascertain the meaning of that term as well. In its current usual sense, a "fine" is "[a] sum of money exacted as a penalty for an [offense], esp. by a court of law or other authority." Fine, Oxford English Dictionary, https://www.oed.com/view/Entry/70359?rskey=3akpqa&result=1&isAdvanced=false#eid (last visited Jan. 10, 2021); see also Fine, Dictionary.com, https://www.dictionary.com/browse/fine (last visited Dec. 7, 2021).[13] And, usually the offense is defined by the government and the sum exacted as a penalty is fixed by the government.

---

[13] The Supreme Court of the United States has held that "the word fine [is] understood to mean a payment to a sovereign as punishment for some offense." United States v. Bajakajian, 524 U.S. 321, 327 (1998); see also Browning-Ferris Inds. of Vermont, Inc. v. Kelso Disposal, Inc., 492 U.S. 257, 259 (1989); Oregon v. Ramos, 340 P.3d 703, 707 (Or. App. 2014).

Thus, the question becomes whether, giving the statutory text ("for any . . . similar penalty") its usual meaning, the payment to Oregon under the split recovery statute resembles or bears a significant relationship to a penalty for an offense.[14] The term "an offense," when used in connection with "for the violation of" most naturally is understood to mean to refer to "an infraction of law", Offense, Merriam-Webster, https://www.merriam-webster.com/dictionary/offense (last visited Jan. 13, 2021), or a "transgression of law," Offense, Dictionary.com, https://www.dictionary.com/browse/offense (last visited Jan. 13, 2021).[15] The answer seems to be that the payment to Oregon does not resemble a penalty for an offense because there is no defined offense for which the payment was required to be paid on account of the violation of some proscribed conduct.

---

[14] In response to the request for briefing on the plain meaning of the statutory text (ECF No. 37), Altria urged consideration of the meaning as reflected in dictionaries in effect in 1951 (Black's Law Dictionary) and 1961 (Webster's Third International Dictionary). Those authorities do not materially differ from the sources cited above. Nor do the sources cited by the United States: Black's Law Dictionary (4th ed. 1968) and Webster's International Dictionary (3rd ed. 1968).

[15] Of course, the word "offense" standing alone can mean breach of duty or moral code. See Offense, Merriam-Webster; Offense, Dictionary.com. But, that does not seem to fit the text here, which uses the article "an" to define something specific that if violated gives rise to a fine or something resembling a fine.

But, candor demands that conclusion respecting the statutory text is not beyond dispute. Therefore, the analysis must continue by looking at other aids to interpretation.

### (b) Relevant Regulations, Stipulations, and Legislative History

The Treasury regulations that guide the application of Section 162(f) define "fine or similar penalty" as detailed in Section E in the Background section. Further, in the JOINT STATEMENT OF UNDISPUTED FACTS, Altria states that the term "similar penalty" as used in Section 162(f) "was intended to cover civil penalties that serve the same purpose as criminal fines." Ex. JX-1 at 12, ECF No. 24-1. As explained by the Senate Finance Committee:

> In approving the provisions dealing with fines and similar penalties in 1969 [when §162(f) was enacted], it was the intention of the committee to disallow deductions for payments of sanctions which are imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute.

S. Rep. No. 92-437 (1971), reprinted in 1971 U.S.C.C.A.N. 1918, 1980 (emphasis added); see, e.g., True v. United States, 894 F.2d 1197, 1204 (10th Cir. 1990) ("[S]ection 162(f) encompasses fines and penalties exacted to sanction or punish conduct which some well-defined state policy seeks to proscribe."); Hawronsky v. Comm'r, 105 T.C. 94, 98 (1995) ("Section 162(f) applies to criminal fines and any similar retributive civil penalty

intended to sanction prohibited conduct.") (emphasis added); Middle Atlantic Distribs., Inc. v. Comm'r, 72 T.C. 1136, 1143 (1979) ("[S]ection 162(f) was intended to include civil penalties which in general terms serve the same purpose as a fine exacted under a criminal statute.") (emphasis added). These authorities and the regulation teach that the "similar penalty" referred to in Section 162(f) is something that is intended to sanction conduct that is prohibited by criminal statute.

The regulation and the foregoing authorities teach the need to determine why the payment to Oregon was made. So, in many respects, the interpretation of "for . . . a similar penalty" overlaps with the determination whether the payment to a government was "for the violation of any law." So, the analysis turns next to that task.

## 3. For the Violation of Any Law

The first word in the phrase "for the violation of any law" (the word "for") gives the need to know the reason why the payment of the similar penalty was made to "a government." However, the text has no definition in the statute. So, again we turn to the ordinary meaning of the word "for" which is a function word to indicate purpose, or it can be a conjunction meaning "because." For, Merriam-Webster, https://www.merriam-webster.com/dictionary/for (last visited Jan. 10, 2021). "For"

23

also is defined to mean "with the object or purpose of" something. For, Dictionary.com, https://www.dictionary.com/ browse/for (last visited Jan. 10, 2021).

The stated purpose appearing in Section 162(f) is requital of a violation of law. But the phrase cannot be divorced from the antecedent phrase "paid to a government" because to be disallowed the payment must be paid to a government on account of the statutorily specified reason ("the violation of any law"). Thus, it is necessary to characterize the reason for the payment to the government.

### (a) Characterization and the Origin of the Liability Giving Rise to the Payment Sought to be Deducted

In this instance, that calls for the identification of the origin of the liability giving rise to the payment at issue. That is because "[t]he <u>characterization of a payment</u> for purposes of <u>§ 162(f) turns on the origin of the liability</u> giving rise to it." See <u>Bailey v. Comm'r</u>, 756 F.2d 44, 47 (6th Cir. 1985) (emphasis added) (citing <u>Middle Atlantic Distribs.</u>, 72 T.C. at 1145); <u>Uhlenbrook v. Comm'r</u>, 67 T.C. 818, 845 (1977). In this case, the task is to determine whether the origin of the liability giving rise to the payment to "a government" (here Oregon) was: (a) the punitive damage award made, and reflected in, the <u>Williams v. Philip Morris Inc.</u> verdict; or (b) Oregon's split recovery statute. See, e.g., <u>True</u>, 894 F.2d at 1197

(reviewing a civil penalty that was assessed pursuant to the Federal Water Pollution Control Act ("FWPCA") and imposed due to an oil leak); Bailey, 756 F.2d at 44 (reviewing a $1,036,000 payment that arose out of a judgment brought by the government against the plaintiff for violations of the Federal Trade Commission Act ("FTCA")); Talley Inds. Inc. v. Comm'r, 116 F.3d 387, 387 (9th Cir. 1997) (assessing whether a portion of the settlement pursuant to the False Claims Act was deductible); S. Pac. Transp. Co. v. Comm'r, 75 T.C. 497 (1980) (determining whether the penalties paid by the petitioner due to violations of the Safety Appliance Act and the Twenty-Eight Hour Act are deductible under Section 162(a)).

Altria contends that the Oregon split recovery statute serves as the origin of the liability for payment to a government, whereas the United States argues that the origin of the liability for the payment made to a government was the punitive damage award itself. Assessment of this issue is informed by Oregon law respecting the award of punitive damages; the instructions on that topic that were given to the jury in Williams v. Philip Morris Inc. and Oregon's split recovery statute. See Ex. 1, ECF No. 35-1.

Under Oregon law, Or. Rev. Stat. § 31.730,[16] punitive damages must be "proven by clear and convincing evidence. Punitive damages cannot be imposed unless the party against whom punitive damages are sought has <u>acted with malice</u> or has <u>shown a reckless and outrageous indifference to a highly unreasonable risk of harm</u> and has <u>acted with a conscious indifference</u> to the health, safety and welfare of others." Or. Rev. Stat. § 31.730 (emphasis added). <u>See generally</u> Or. U.C.J.I. § 75.02 (model jury instructions for punitive damages). The jury instructions in <u>Williams v. Philip Morris Inc.</u> are firmly rooted in the statute, and they clearly reflect these statutory requirements. But, consistent with the statute, the punitive damage instructions do not themselves mention the conduct for which punitive damages are sought.

In sum, Oregon's substantive law respecting when punitive damages can be awarded focus on state of mind (<u>i.e.</u>, with malice, reckless and outrageous indifference, and conscious indifference). If state of mind is shown in tandem with the charged conduct, the jury can, but need not, award punitive damages. Also, it is significant that the Oregon punitive damage statutes do not themselves prohibit or proscribe specific conduct or define conduct that itself is an offense. So, in a very real sense, the resulting punitive damages award is not

---

[16] <u>See</u> BACKGROUND <u>supra</u> Section G, 13-15.

much at all like a fine because a fine is levied by virtue of specified punishable conduct, not because of the state of mind that accompanies the conduct. In like fashion, because punitive damages are animated by state of mind, not for committing proscribed conduct, the award is not "for the violation of any law."

In other words, the conduct (violating a law) is necessary for both a fine and an award of punitive damages, but punitive damages cannot be imposed unless the statutorily defined state of mind accompanies the conduct, whereas a fine is imposed because of proscribed conduct even in the absence of such a state of mind. And, while the purpose of the punitive damage award is to impose a penalty for, and to deter, certain conduct, the purpose is accomplished not by creating an offense, but by punishing conduct otherwise punishable by the general tort law when (and only when) that conduct is accompanied by the specific states of mind that are identified in Oregon's substantive law.

With that in mind, it cannot be said that an award of punitive damages is "a similar penalty" that is imposed because a particular offense has been committed. And, that is so notwithstanding that such awards are intended to have punitive and deterrent effects.

Moreover, neither Oregon's substantive punitive damages statute nor the instructions based on it mention Oregon's split

27

recovery statute. Nor, do they ask the jury to contemplate, or to decide, how, or even if, any award of punitive damages will be allocated. And, although Oregon's substantive punitive damage statute permits punitive damage awards, it imposes no obligation on the defendant to provide payments to Oregon (a government).

Therefore, without the split recovery statute, the punitive damage award in <u>Williams v. Philip Morris Inc.</u> would have gone entirely to the Williams Estate. That did not happen, however, because the split recovery statute intervened, made Oregon a judgment creditor of part of the punitive damage award, and directed payment of that part of the punitive damages to Oregon, specifically to be used for the victim's compensation fund. Accordingly, the Oregon split recovery statute serves as the origin of Philip Morris's liability to make payment of a part of the punitive damages to the government, or in other words, the "origin of the liability" for the payment made to a government. <u>Bailey</u>, 756 F.2d at 47.

The Oregon Supreme Court recognized as much in <u>Williams v. RJ Reynolds Tobacco Co.</u>, finding that Oregon's "interest in the punitive damages award <u>arises out of a statute</u> that is indifferent to the factual basis of the underlying litigation. The State's <u>entitlement to the statutory share is not</u>, even indirectly, <u>related to or dependent on the tobacco-related conduct</u> . . ." 271 P.3d at 112 (emphasis added).

28

The interpretation of a state statute by the highest court of a state is binding on federal courts because "[n]either [the Supreme Court of the United States] nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." Johnson v. Frankill, 520 U.S. 911, 916-17 (1977) (citations omitted). So, in this case, the Oregon law is that "[t]he State's entitlement to the statutory share is not, even indirectly, related to or dependent on [Philip Morris'] tobacco-related conduct. . . ." Williams v. RJ Reynolds Tobacco Co., 271 P.3d at 112. That is because "the state's interest in the punitive damages award arises out of a statute [the split recovery statute] that is indifferent to the factual basis of the underlying litigation." Id.

To be clear, the punitive damages awarded in Williams v. Philip Morris Inc. were in fact a punishment, but the punitive damages award did not act as the basis in law or fact for the payment that Altria made to "a government." Thus, the payment to Oregon originates from the split recovery statute, not from the jury's verdict in favor of the Williams Estate.

### (b)   Section 162(f): Regulatory and Legislative History

Section 162(f)'s regulatory and legislative history, which help to delineate the boundaries between deductible and nondeductible payments, confirm that view. An IRS Proposed Rule

entitled "Denial of Deduction for Certain Fines, Penalties, and Other Amounts; Information with Respect to Certain Fines, Penalties, and Other Amounts" provides useful background on Section 162(f)'s evolution:

> <u>Prior law under section 162(f)</u> was enacted in 1969. Public Law 91-172, 83 Stat. 487 (1969). Unless certain exceptions applied, prior law under section 162(f) <u>disallowed an ordinary and necessary deduction</u>, under section 162(a), <u>for any fine or similar penalty paid to a government for the violation of a law</u>. **This provision codified existing case law that denied an ordinary and necessary business expense deduction for fines or similar penalties because "allowance of the deduction would frustrate sharply defined national or State policies proscribing the particular types of conduct evidenced by some governmental declaration thereof."** <u>See</u> S. Rep. No. 552-91 at 273—274 (1969). On February 20, 1975, the Treasury Department and the IRS issued final regulations concerning prior law under section 162(f) (TD 7345, 40 FR 7437) (1975 regulations). <u>See</u> § 1.162-21. Amendments were published on July 11, 1975 (T.D. 7366, 40 FR 29290). **Section 1.162-21(a) of the 1975 regulations describe the term "paid to" a government. Section 1.162-21(b)(1) of the 1975 regulations describes certain amounts that constitute fines or similar penalties; § 1.162-21(b)(2) provides that compensatory damages paid to a government do not constitute a fine or penalty.** Section 1.162-21(c) provides examples to illustrate the application of the 1975 regulations.

85 Fed. Reg. 28524, 28525 (May 2020) (emphasis added).

The regulations pertaining to Section 162 were updated in 1975 and again in 2021. The 1975 regulations were applicable when the 2012 version of Section 162 existed. The 1975 rule and regulations mirror the historical language in the IRS Proposed Rule:

> **The category of fines and similar penalties includes
> amounts paid.** . . as a civil penalty imposed by
> Federal, State, or local law . . ., **amounts paid in
> settlement of an actual or potential liability for a
> fine or penalty,** and amounts forfeited as collateral
> posted in connection with a proceeding which could
> result in a fine or penalty; but **it excludes
> expenses of defending against a prosecution or civil
> suit and compensatory damages paid to a government.**

40 Fed. Reg. 29290 (1975) (emphasis added).

Examples from the 1975 regulations illustrate that
penalties and fines paid to a state by a corporation are not
considered deductible. Those examples also indicate that
deductibility looks to whether the corporation violated a law
that carries a penalty or fine:

> B Corp, owned and operated on the highways of State
> X a truck weighing in excess of the amount permitted
> under the law of State X. R Corp. was found to have
> violated the law and was assessed a fine of $85
> which it paid to State X. Section 162(f) precludes R
> Corp. from deducting the amount paid.
>
>                          ***
>
> S Corp. was found to have violated a law of State Y
> which prohibited the emission into the air of
> particular matter in excess of a limit set forth in
> a regulation promulgated under that law. The
> Environmental Quality Hearing Board of State Y
> assessed a fine of $500 against S. Corp. The fine
> was payable to State Y, and S Corp. paid it. Section
> 162(f) precludes S Corp from deducting the $500
> fine.

40 Fed. Reg. 7439 (1975).

In fact, the majority of the 1975 examples focus on the
need for there to have been violations of state statutes that

31

themselves actually exact a fine or penalty. Id. More importantly, none of the examples allude to a circumstance involving the denial of deductibility of punitive damages imposed by a court or jury. Nor do the examples offer guidance respecting how to treat a punitive damage award to a non-governmental party when part of the award is diverted to a non-party government entity.

A 1980 IRS Revenue Ruling addressing Section 162(f) advised that "the courts and the Service have recognized that payments made in settlement of lawsuits are deductible if the acts which gave rise to the litigation were performed in the ordinary conduct of the taxpayer's business." Rev. Rul. 80-211, 19082, C.B. 57, Ex. 1 at 2, ECF No. 33-1 (emphasis added). The revenue ruling went on to hold that "amounts paid as punitive damages incurred by the taxpayer in the ordinary conduct of its business operations are deductible as ordinary and necessary business expense under Section 162 of the Code." Id. at 3. And, more particularly, the ruling plainly stated that "amounts paid by a corporation as punitive damages that arose as a result of a civil lawsuit against the corporation for breach of contract and fraud in connection with the ordinary conduct of its business activities are deductible . . ." Id. (emphasis added).

The recent alteration of Section 162(f) also informs the analysis. Section 162(f) was expanded by Section 13306(a) of the Tax Cut Jobs Act ("TCJA") of 2017. <u>See</u> Public Law 115-97, 131 Stat. 2054 (2017), which now states, in relevant part:

> **(f) Fines, penalties, and other amounts.--**
> **(1)  In  general.**--Except  as  provided  in  the following  paragraphs  of  this  subsection,  no deduction  otherwise  allowable  shall  be  allowed under  this  chapter  for  any  amount  paid  or incurred  (whether  by  suit,  agreement,  or otherwise)  to,  or  at  the  direction  of,  a government  or  governmental  entity  in  relation  to the  violation  of  any  law  or  the  investigation  or inquiry  by  such  government  or  entity  into  the potential violation of any law.

* * *

However, Section (f)(1) was also limited by Section (f)(3) which provides:

> **(3)  Exception  for  amounts  paid  or  incurred  as  a result  of  certain  court  orders.**  <u>Paragraph  (1)</u> shall <u>not apply</u> to any <u>amount paid</u> or incurred by reason of any order of a court in a <u>suit in which  no  government  or  governmental  entity  is  a party</u>.

26 U.S.C. § 162(f)(2021) (emphasis added); <u>see also</u> TCJA, Pub. L. No. 115-97, 131 Stat. 2054, 2126 (2017).

Subsequent regulations explain that the 2017 amendment to Section 162(f) encompasses all payments furnished to a government or government entity:

> [S]ection 162(f)(1) provides that no deduction otherwise allowable under chapter 1 of the Code . . . shall be allowed for any amount paid or incurred (whether by suit, agreement, or otherwise) to, or at the direction of, a government or governmental entity in relation to the violation of any law or the investigation or inquiry by such government or governmental entity into the potential violation of any law.

86 Fed. Reg. 4970, 4970-71 (2021). But the new regulations also give guidance respecting the exception to the general nondeductible rule that appears in Section 162(f)(3), saying that:

> Under section 162(f)(3), **the general rule that disallows a deduction does not apply to any amount paid or incurred pursuant to an order in a suit in which no government or governmental entity is a party** . . . the final regulations clarify that <u>section 162(f)(1) does not apply to any amount paid or incurred by reason of any order or agreement in a suit in which no government or governmental entity is a party</u>.

86 Fed. Reg. 4970, 4976 (2021), codified at Treas. Reg. §1.162-21(c); 26 U.S.C. § 162(f)(3) (emphasis added).

The current text of Section 162(f) (and its implementing regulations) confirm that the deduction is foreclosed only as to amounts that are paid to the government or a government entity when the government is a party to the litigation. Accordingly, today, a payment to an individual, that a government later lays claim to part of under a separate statute, cannot be considered a fine or similar penalty paid to a government. The current statute and regulations reflect specifically what is reasonably

implied in the 2012 version: the "fine or similar penalty paid to a government for violation of any law" refers to cases where the government exacts the fine or similar penalty when it is a party to the case.

### (c)   The Purpose of the Payment Required by the Split Recovery Statute

Even if the 2012 version of Section 162(f) is not read in that way, the payment made under the Oregon split recovery statute cannot be considered a fine or similar penalty or as payable for a violation of law because its purpose is to fund a state-based victims compensation fund. And, whether the payment is ultimately deductible depends on its purpose. In Talley Inds. Inc., the Ninth Circuit relied on this test as established by the Tax Court in S. Pac. Trans. Co. v. Comm'r, 75 T.C. 497 (1980):

> [W]hether a civil penalty is deductible depends upon purpose which penalty is to serve: if penalty is imposed for purposes of enforcing law and as punishment for violation thereof, it is not deductible; if penalty is imposed to encourage prompt compliance with requirement of the law, or as remedial measure to compensate another party for expenses incurred as result of violation, it is deductible; and if penalty ultimately serves each of these purposes, tax court must determine which purpose it was designed to serve.

Talley Inds. Inc., 116 F.3d at 385 (quoting S. Pac. Trans. Co., 75 T.C. at 652) (emphasis added) (internal quotations omitted). Here, the purpose of the payment compelled by the

split recovery statute is to fund a state-based crime victim fund, not to enforce a law or to punish a violation of law.

To understand whether a law characterizes a payment as a fine or similar penalty, the Court may also evaluate the statutory intent.[17] Here, the intent of the Oregon split recovery statute is evident from its text.

The split recovery statute explains that the legislature intends to provide funding to assist victims of crime, <u>inter alia</u>, by requiring that a part of any punitive award in any case in state court is to be paid to the State and, to that end, the statute makes the State a judgment creditor upon entry of the verdict. <u>See</u> Or. Rev. Stat. § 31.735(1). Oregon courts have held that the intent and purpose of the statute is "<u>to modify the way in which those [punitive] damages are distributed</u>," rather than to alter the jury's award of punitive damages. <u>DeMendoza v. Huffman</u>, 51 P.3d 1232, 1245 (Or. 2002) (emphasis added).[18] And,

---

[17] <u>See</u> <u>Colt Indus., Inc. v. United States</u>, 880 F.2d 1311 (Fed. Cir. 1989) (reviewing the legislative history and intent behind the Clean Water Act and Clean Air Act to assess whether a violation resulting in penalties was deductible); <u>S. Pac. Transp. Co.</u>, 75 T.C. at 583 (evaluating the legislative history to determine that "the legislation which was being considered did not deal directly with the deductibility of the expenses associated with timber contracts as 'ordinary and necessary expenses' under section 162.").

[18] It is not necessary that Oregon must be a party to the lawsuit "to assert its right as a judgment creditor" under the split recovery statute to receive a "portion of the . . . punitive damages award." <u>Engquist v. Oregon Dep't of Agric.</u>, 478 F.3d 985

the parties stipulate that the split recovery statute "is not punitive. Rather, its purpose is to redirect a portion of each punitive damage award from the plaintiff to the Oregon DOJ's Criminal Injuries Compensation Account." JOINT STATEMENT OF UNDISPUTED FACTS ¶ 24, ECF No. 24. For those reasons, the discernable statutory intent approach to statutory analysis supports the conclusion that Section 162(f) does not bar the deduction claimed by Altria.

   **(d)   Economic Reality**

   Also, "[w]hen mulling transactions between private parties, courts that are required to make tax characterizations typically look to substance—that is, the economic reality of the particular transaction, objectively viewed, rather than the form chosen by the parties." Fresenius Med. Care Holdings, Inc. v. United States, 763 F.3d 64, 70 (1st Cir. 2014). Of course, in this case, the form was not chosen by the parties. Rather, it is dictated by a state statute. Nonetheless, an examination of the economic reality is a useful way to assess the validity of the other analytical approaches discussed above. Here, the economic reality is that the split recovery statute does not give the State:

---

(9th Cir. 2007), cert. 552 U.S. 1136, aff'd 553 U.S. 591 on remand 2009 WL 497996, as amended.

the right to execute on the verdict alone to collect its share of the punitive damages awarded by the jury; rather, it gives the State, at most, an economic expectancy of 60 percent of whatever portion of punitive damages, if any, eventually is memorialized in a judgment.

Patton v. Target Corp., 242 P.3d 611, 617 (Or. 2010). That reality supports the view that the redirected payment required by the split recovery statute is not a fine or similar penalty because fines and similar penalties are not contingent.

Contrary to the concern expressed by the United States, this result does not undermine the public policy doctrine codified by Section 162(f)[19] because allowing the deduction would not frustrate the public policy of Oregon for the reason that the State still recovered a portion of the punitive damages and Altria still had to pay the Williams Estate its part of the award. Hackworth v. Comm'r, 155 F. App'x 627, 630 (4th Cir. 2005). Here, the public policy and laws of the State of Oregon have been fulfilled because allowing this deduction does not "encourage" noncompliance with state laws and still enables the full "sting of the penalty" as prescribed by the state

---

[19] See Colt Indus., Inc. v. United States, 11 Cl. Ct. 140, 143 (1986) (noting that at the time Section 162(f) was enacted, "a general rule had evolved in administration of the income tax that deductions which frustrate sharply defined national or state policies that prescribe particular types of conduct would be disallowed [because] the allowance of deductions for fines and similar penalties would take the sting out of penalties prescribed by law.").

legislature. <u>Tank Truck Rentals, Inc. v. Comm'r</u>, 356 U.S. 30 (1958).

**4. The Result**

In sum, Oregon's split recovery statute acts as a default payment scheme to allow the State to help finance a fund to be used to compensate victims of crime. The split recovery statute, in and of itself, does not act to punish the party against whom the punitive damage award was made. It simply directs that a part of the award goes to help fund a state program. In so doing, it redirects to the State payment to part of the award made in the case. For the reasons set forth above, a payment under the split recovery statute is not "for any fine or similar penalty paid to a government for this violation of any law."

**5. The Authorities Relied on by the United States**

The cases on which the United States principally relies all involve payments to the government as a result of litigation, settlement, or the like by the government against the taxpayer. <u>See, e.g.</u>, <u>True</u>, 895 F.3d at 1197 (government exacted a civil penalty on a corporation for violating the Federal Water Pollution Control Act); <u>Nacchio v. United States</u>, 2015-5114, 2015-5115 (Fed. Cir. Jun. 10, 2016) (government action against taxpayer for insider trading resulting in a non-deductible forfeiture); <u>Bailey</u>, 756 F.2d at 45 (government action to recover civil penalties for taxpayer's disobedience of consent

order to cease and desist from operating a deceptive business under the FTCA); S. Pac. Transp. Co., 75 T.C. at 643 (government action against railways for violation of the Safety Appliance Act and Twenty-Eight Hour Act resulting in penalties and fines that were non-deductible); Colt Indus., Inc., 880 F.2d at 1313 (government action against taxpayer resulting in civil penalties pursuant to the Clean Water Act and Clean Air Act); Talley Inds. Inc., 116 F.3d at 383 (government action against defense contractor resulting in a settlement paid to the government for false and fraudulent statements made to the government); Hackworth, 155 F. App'x at 627 (government action against taxpayers for illegal gambling resulting in a forfeiture settlement). The United States has supplied no authority holding that a payment made to the government because of a state revenue generating statute after a judgment in a private civil suit warrants consideration as a fine or similar penalty within the meaning of Section 162(f).

**B. Other Arguments**

It is not necessary to assess the alternative arguments suggested by the parties. Specifically, the Court does not address whether Altria's payment of punitive damages would still be deductible if the Court looked beyond the split recovery statute nor disparate treatment of federal tax law applied to

the states. PL. ALTRIA GROUP, INC.'S TRIAL BR. 19, 20, ECF No. 25.

### CONCLUSION

Altria has proved that it is entitled to a refund in the amount of $9,274,072 with regard to the overstatements of income, unclaimed credits, and overstatements of tax described in the Complaint for the 2012 tax year, and such further amounts as may be calculated due to corresponding correlative adjustments or such greater amount as is legally refundable, plus statutory interest as allowed by law.

It is so ORDERED.

_____ /s/ _____
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: January 19, 2022